470 So.2d 720 (1985)
June Jacqueline SCHWARTZ, Appellant,
v.
ZIPPY MART, INC., Etc., et al., Appellees.
Carrie ESSES, Appellant,
v.
ZIPPY MART, INC., Etc., et al., Appellees.
Nos. AN-63, AN-64.
District Court of Appeal of Florida, First District.
May 7, 1985.
Rehearing Denied July 2, 1985.
*721 Randall J. Silverberg, Jacksonville, for appellants.
E. Robert Williams and James H. McCarty, Jr., of Boyd, Jenerette, Leemis & Staas, P.A., Jacksonville, for appellees Zippy Mart, Inc.

EN BANC OPINION
PER CURIAM.
Schwartz and Esses bring this consolidated appeal from identical summary final judgments in favor of defendant Zippy Mart, Inc.
The appeal turns on whether appellants' claims in tort against appellee Zippy Mart, Inc. are barred because the Workers' Compensation Act provides the exclusive remedy for their claims. We find that it does and affirm the trial court's judgment for appellee Zippy Mart.
Appellants Schwartz and Esses are former employees of Zippy Mart, Inc., a convenience store corporate chain. Bobby Adams was employed by Zippy Mart as supervisor of nine Zippy Mart stores. Schwartz and Esses were employed at stores supervised by Adams.
Each filed a complaint in circuit court against Adams and Zippy Mart for assaults and batteries alleged to have been committed by Adams in the course and scope of his employment with Zippy Mart. In their respective complaints each plaintiff alleged a count for assault and a count for battery against Zippy Mart under the doctrine of respondeat superior. Plaintiffs each alleged a third count against Zippy Mart for negligent hiring, supervision and retention of its employee Adams.
In the battery count each appellant alleged that while Adams was performing his supervisory duties over her during the course of her employment with Zippy Mart, he intentionally pinched, grabbed and patted her shoulders, buttocks and other parts of her body against her will. Esses further maintained in her complaint that Adams forcibly grabbed her about her breasts and her person against her will. According to Esses' deposition concerning this occasion, Adams attacked her while she was stocking a cooler with beer and milk. Esses testified that during this incident Adams unbuttoned her blouse, grabbed her breasts and tore the zipper on her pants. Schwartz deposed that Adams french-kissed her, unbuttoned her blouse, put his hands inside *722 her bra and grabbed her breasts. They both testified that on a number of occasions Adams hugged, kissed, embraced, patted and pinched them against their wills.
In the assault count Schwartz and Esses realleged the battery allegations, which maintained that as a result of the batteries Schwartz and Esses endured mental suffering. They further alleged in the assault count that because of the unpermitted touchings and the suggestions for sexual intercourse they were placed in fear and endured mental suffering.
The final count alleged Zippy Mart breached its duty to provide Schwartz and Esses with a safe place to work. Appellants alleged that Zippy Mart knew or should have known of the propensities of Bobby Adams to touch female employees under his supervision against their will and that Zippy Mart was negligent in failing to properly supervise Adams and in failing to prevent the assaults and batteries. We will later address our conclusion that the pleadings, depositions, admissions and affidavits indicate that Zippy Mart could be guilty of no more than simple negligence in this regard.
Appellants concluded by alleging that as a direct result of these assaults and batteries they had endured great suffering of mind for which they sought compensatory and exemplary damages. Appellants sought to hold both Adams and Zippy Mart jointly and severally liable for these damages.
Following consolidation of these cases for trial, Zippy Mart filed a motion for summary final judgment in each of these cases. As grounds for these motions Zippy Mart alleged it could not be held vicariously liable for the alleged acts of Adams because the acts were outside the scope of Adams' employment and were not in the furtherance of Zippy Mart's business. In addition, Zippy Mart alleged that the trial court lacked jurisdiction over the cases because the Workers' Compensation Act provided appellants with an exclusive remedy.
The trial court granted Zippy Mart's motion for summary judgment in favor of Zippy Mart (only), finding that there were no genuine issues of material fact on
(1) the question of said defendant's vicarious liability under the doctrine of respondeat superior for the alleged assaults and batteries complained of; and
(2) the question of said defendant's negligence in hiring, retention and/or supervision of defendant Bobby Adams.
(The court did not grant summary judgment in favor of Bobby Adams.)
The trial court did not address Zippy Mart's summary judgment contention that the Workers' Compensation Act provides the exclusive remedy for appellants' claims. We find that since the Act does provide the exclusive remedy, this provides sufficient basis for the summary final judgment in favor of the employer Zippy Mart.
There is no dispute between the parties that the alleged assaults and batteries occurred during the course and scope of appellants' employment with Zippy Mart. Appellants argue that a mental or nervous injury due to fright or excitement only is not an injury by accident arising out of the employment. This is true, and Section 440.02, Florida Statutes (1979), so provides. However, the injuries incurred by appellants appear not to be due to fright or excitement only, but to have been primarily caused by Adams' batteries. It appears the alleged batteries were primarily responsible for appellants' suffering. Esses testified that the "cooler" incident was "the biggest one that [stood] out in [her] mind" and Schwartz quit within a week of the time Adams allegedly unbuttoned her blouse and grabbed her breasts.
The alleged batteries suffered by Schwartz and Esses are sufficient injuries to be covered by the Workers' Compensation Act. These unpermitted touchings and grabbings were more than "mere" touchings or technical batteries.
Appellants argue that the legislature never intended sexual harassment to be covered by the Workers' Compensation *723 Act. If this is true, it should be addressed by the legislature. We are not free to hold that if the battery is of a sexual nature that the employee is not entitled to workers' compensation coverage and benefits. Nor are we free to hold that a battery is not a battery. Our court has held that batteries of slighter touchings than these are sufficient traumas to entitle the victims to workers' compensation coverage. In Prahl Brothers, Inc. v. Phillips, 429 So.2d 386 (Fla. 1st DCA 1983), we held that a claimant's disabling psychiatric impairment which was precipitated by an employment-related robbery was compensable. There the non-disabling physical trauma, a gun placed to claimant's head and a ring physically removed from her finger, were held to be sufficient circumstances in the causal etiology of claimant's mental injury. The claimant in Prahl was held entitled to workers' compensation. If appellants Schwartz or Esses had, for example, suffered disabling psychiatric impairment, as in Prahl, supra, they would have been entitled to workers' compensation.
Appellants argue that because Schwartz and Esses suffered no medical expenses or disability as a result of Adams' acts, they have no relief available under the Workers' Compensation Law and are free to pursue their common law remedies for damages against Zippy Mart. Appellants would be free to pursue common law remedies for injuries not encompassed within the act. See Williams v. Hillsborough County School Board, 389 So.2d 1218 (Fla. 1st DCA 1980). However, if the injury is one encompassed within the act, as here, the fact that their injuries are not compensable ones does not destroy the immunity provisions of the act. It is not a prerequisite to an injury being within the purview of the act that it actually results in compensable disability or medical expenses. In Grice v. Suwannee Lumber Manufacturing Company, 113 So.2d 742 (Fla. 1st DCA 1959), our court, speaking through Chief Judge Wigginton, stated:
Every accidental injury suffered by an employee which arises out of and in the course of his employment is within the scope of the Act if it is of such character that it results, or might have resulted, in a loss or diminution of earning capacity, either temporary or permanent, or for which the employer is obligated to furnish medical or other benefits. The fact that in a particular case the injury suffered does not in fact result in a loss or diminution of earning capacity is immaterial. By accepting the benefits of the Act with the concomitant right to compensation and medical expenses irrespective of whether the employer is at fault, the employee relinquishes his common law rights to compensation for those elements of damages that normally flow from the injury but, having no relationship to earning capacity, are not compensable under the Act.
The Workers' Compensation Act affords the exclusive remedy for recovery of damages arising from compensable, or potentially compensable injuries falling within its purview. See Grice, supra, and Section 440.11, Florida Statutes (1979), which provides:
440.11 Exclusiveness of liability. 
(1) The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer ... to the employee.... (emphasis supplied)
As basis for their complaint against Zippy Mart, appellants allege that Adams was acting within the scope of his employment. Nothing in the record except this bare allegation, which was denied, supports this.
For Adams' conduct to have been within the scope of his employment:
1. It must have been the kind he was employed to perform;
2. It must have occurred within the time and space limits of his employment; and
3. It must have been activated at least in part by a purpose to serve the master.
See Morrison Motor Company v. Manheim Services Corporation, 346 So.2d 102 *724 (Fla. 2d DCA 1977), cert. denied, 354 So.2d 983 (Fla. 1978), which sets forth this test and capsules it:
The convenient test is whether the employee was doing what his employment contemplated.
Although Adams' alleged actions occurred within his employment time parameters, they fail the rest of the test. The depositions, admissions or affidavits do not indicate that Adams in these alleged sexual assaults and batteries was doing what his employment contemplated. There is no basis for any conclusion but that the assaults and batteries were undertaken for reasons which were purely personal to Adams and were neither activated by a purpose to serve Zippy Mart nor related in any way to the furtherance of its business. See Friedman v. Mutual Broadcasting System, Inc., 380 So.2d 1313 (Fla. 3d DCA 1980).
An employer, of course, cannot intentionally injure an employee and enjoy immunity from suit. However, there is a distinction between a supervisory employee, such as Adams, and a person who can genuinely be characterized as the alter ego of the corporation. In 2A Larson's Workmen's Compensation Law, Section 68.21, 13-28 (1982), it is stated:
When the person who intentionally injures the employee is not the employer in person nor a person who is realistically the alter ego of the corporation, but merely a foreman, supervisor or manager, both the legal and the moral reasons for permitting a common-law suit against the employer collapse, and a substantial majority of modern cases bar a damage suit against the employer.
Similarly, an employer cannot command or expressly authorize the intentional infliction of an injury upon an employee and still claim the exclusive remedy provisions of the compensation act. See 2A Larson's Workmen's Compensation Law, Section 68.21, 13-31 and 13-32; Section 68.23, 13-38 (1982). However, in the instant case, the appellants' complaints do not allege that Zippy Mart commanded or expressly authorized the batteries committed by Adams. Rather, the complaints allege only simple negligence on the part of Zippy Mart. Specifically, the only allegation regarding Zippy Mart's liability for the actions of Adams was that it had:
knowledge of or should have known of the propensities of Bobby Adams to touch female employees under his supervision against their will ... [and] did fail to properly supervise or reprimand Bobby Adams or curtail his employment so as to prevent or ameliorate the wrongs committed against [Plaintiffs].
The record appears to support the allegations that Zippy Mart could be guilty of only simple negligence.
Appellants argue that on at least ten occasions Esses reported the activities of Bobby Adams to Zippy Mart and that Schwartz related these incidents to several Zippy Mart store managers. Our review of the record indicates that these informal reports were directed primarily to fellow co-employees of Esses and Schwartz and the respective parties' store managers. The only individuals allegedly receiving notice of such activities who were in a supervisory role over Bobby Adams were David St. Clair, the Florida District Manager for Zippy Mart, and possibly Peck Fleming, a Zippy Mart Vice-President, although Esses' testimony on this was equivocal and Fleming denied having received such notice. The only incidents reported to personnel that were supervisory over Bobby Adams were the oral reporting by telephone of the "cooler" incident and an oral reaffirmation of sexual harassment made by Esses after she quit, to either David St. Clair or Peck Fleming, and the reporting by Schwartz to David St. Clair of the incident wherein Adams allegedly unbuttoned Schwartz's shirt and put his hands inside her bra. As to the latter incident, Schwartz met with St. Clair within a day or two after the incident occurred. At this meeting, St. Clair suggested to Schwartz that they "set" Adams up by having Schwartz invite Adams to her apartment, but Schwartz refused. Within a week of the incident, Schwartz quit. The actions of Zippy Mart therefore do not appear *725 to be of such a neglectful nature to infer employer intention or direction as to Adams' alleged acts. It is clear from the pleadings, depositions, admissions and affidavits that Zippy Mart could be guilty of simple negligence only and there is no basis for an action based on wantonness, willfulness or malice of Zippy Mart.
In Workers' Compensation, the immunities of the law inure to those who accept the liabilities imposed therein. See Warwick v. Hudson Pulp & Paper Company, Inc., 303 So.2d 701 (Fla. 1st DCA 1974).
AFFIRMED.
SHIVERS, JOANOS, THOMPSON, and WIGGINTON, JJ., concur.
WENTWORTH, J., concurs specially with opinion.
NIMMONS, J., concurs specially with opinion.
ERVIN, C.J., dissents, with opinion.
SMITH, J., dissents, with opinion, in which ERVIN, C.J., and MILLS, BOOTH and ZEHMER, JJ., concur.
WENTWORTH, Judge, specially concurring.
I concur in the result reached by the majority. The complaints against Zippy Mart are phrased in terms normally associated with negligence claims. The complaints do not specifically allege, and the record does not otherwise indicate, any intentional tort or conduct on the part of Zippy Mart which might support a finding of willful intent.[1]
Were this case one involving prior notice of specific acts, and employer response thereto, which might support a finding of inferred willfulness, I do not think that the broad statement found in Larson, at § 68.21, quoted in the majority opinion, would be applicable. While the legal and moral reasons for allowing a civil suit may collapse when a corporate employer has no prior notice of an employee's offensive propensities, as is generally the case when an injury results from an isolated incident of assaultive behavior, that rationale does not extend to situations where the employer knows of persistent abusive behavior and passively condones its continuance.
The extension of statutory immunity to civil actions for willful conduct could effectively result in a license for employers to permit harassment with virtual impunity, since sexual harassment will not ordinarily result in injuries for which compensation is provided under Chapter 440, Florida Statutes, even when the statute is deemed applicable. The declared purpose of compensation provisions do not require that result, and I perceive no legislative intent to shield employers, individual or corporate, from direct civil liability for intentional torts or actions based on employer conduct which might inferentially support a finding of willful intent.
NIMMONS, Judge, concurring specially.
I concur in the opinion of the court. However, to the extent that the opinion implies that Zippy Mart's right to rely upon the worker's compensation exclusivity provision is dependent upon the degree of Zippy Mart's negligence, I would disagree. The exclusivity provision applies regardless of the degree of Zippy Mart's negligence:
An employer under this Act is not liable in tort to employees by virtue of the express language of the Act. Such immunity is the heart and sould of this legislation which has, over the years been of highly significant social and economic benefit to the working man, the employer and the State. And, whether the injury to the employee is caused by "gross negligence," "wanton negligence," "simple negligence" passive or active, or no negligence at all of the employer, is of no consequence. There is no semblance of suggestion in these statutes that the Legislature intended to *726 make any distinction in degrees of negligence so far as the employer's immunity is concerned and we see no reason or logic in any distinction.
Seaboard Coast Line Railroad Company v. Smith, 359 So.2d 427, 429 (Fla. 1978). See also Brown v. Winn-Dixie Montgomery, Inc., 469 So.2d 155 (Fla. 1st DCA 1985); Coney v. International Minerals & Chemical Corporation, 425 So.2d 171 (Fla. 2nd DCA 1983).
ERVIN, Chief Judge, dissenting.
Although the trial court, as the majority has acknowledged, did not specifically rule upon Zippy Mart's contention that the Workers' Compensation Act provides the exclusive remedy for appellants' claims, the majority now undertakes to rule on this undecided issue. I will not repeat all that I said in my dissent to Brown v. Winn-Dixie Montgomery, Inc., 469 So.2d 155 (Fla. 1st DCA 1985), nevertheless it would seem to me that Professor Larson's analysis is equally applicable to the facts before us as in Brown: If the essence of the tort is non-physical, then the tort action should not be barred. 2A Larson, The Law of Workmen's Compensation § 68.34(a) at 13-62  13-63 (1983 ed.). The injuries alleged in the instant consolidated cases charge no physical injuries that required medical attention, or any disabling mental conditions, only that as a result of the supervisory employee's actions, plaintiffs were placed in fear and endured mental suffering. Such injuries clearly fall outside the coverage of the Florida Workers' Compensation statutes. The count alleging assault obviously should not have been subjected to summary judgment since the tort does not require physical injury or contact. Its essence is putting the victim in fear of bodily harm. As Larson states: "If bodily harm accompanies assault, ..., the exclusiveness bar comes into play. If bodily harm does not accompany assault, the exclusiveness bar does not come into play. The conclusion must be that the test is not just the legal ingredients of assault, but also the results  specifically whether physical injury of the kind dealt with by the compensation act is produced." Id. at § 68.34(a), at 13-62. Following the above analysis, however, I would agree with the majority that the tort alleging battery, involving as its essence physical injury, was properly dismissed.
I additionally take issue with the majority's conclusion that the employer cannot be vicariously responsible for the supervisory employee's intentional torts under the doctrine of respondeat superior. In my judgment it is fundamentally inconsistent, as applied to the facts of this case, for the majority to say on the one hand that the plaintiff's action is barred by the exclusivity provisions of section 440.11, Florida Statutes, because the accident arose out of and in the course of employment, but then to say that respondeat superior cannot apply because at the time the intentional acts were committed, the assailant was not acting in the course of his employment. Although the term "course and scope of employment" is not identical for workers' compensation and respondeat superior purposes, in that the former requires that the injury arise in the course of employment,[1] *727 while the latter dictates that the tortious act of the employee occur during the course of his employment, the courts often make no distinction in the term's applicability, in situations where the defenses of res judicata or collateral estoppel are raised as a bar to tort actions arising from the same transaction as that involved in workers' compensation claims. See Thurston v. Morrison, 141 So.2d 291 (Fla. 2d DCA 1962); Akins v. Hudson Pulp and Paper Company, Inc., 330 So.2d 757 (Fla. 1st DCA 1976); United States Fidelity and Guaranty Company v. Odoms, 444 So.2d 78 (Fla. 5th DCA 1984); Cutcher v. C.A. Walker, et al. d/b/a Sadisco of Florida, et al., 455 So.2d 1335 (Fla. 1st DCA 1984). See also Annot. 84 A.L.R.2d 1036 (1962). It is generally recognized that "award[s] of compensation boards ..., as well as the judgments of courts are ... held to be conclusive on the parties as to matters and issues involved within their jurisdiction." Yovan v. Burdine's, 81 So.2d 555, 557 (Fla. 1955).
Although no prior determination has been made by a workers' compensation deputy as to whether the injury involved in the present case was the result of an accident which arose out of and in the course and scope of employment, nevertheless, if the injury were one that fell within the fundamental coverage pattern of the act, I submit that the injury would be deemed to have occurred within the course and scope of employment, and a determination on such question in one proceeding would be binding in another. Restated, if the injury which occurred were a covered compensable injury, a later tort action would be barred on the ground that the injury was one arising within the course and scope of employment under the exclusivity provisions of section 440.11, but not, as stated by the majority, on the ground that the employee's tort was not committed during the course of his employment.
In discussing the relationship between the terms "course of employment" for respondeat superior and workers' compensation purposes, Professor Larson offers the following observations:
Before approaching the specific problems of course of employment, one should observe several general features of the phrase, the importance of which will appear from time to time. First, it does not say, as most people paraphrase it, that the employee must have been in the course of his employment  although usually it amounts to the same thing; it says that the injury must arise in the course of the employment. Second, the usual verb is not to "occur" in the course of employment, but to "arise," which in a close case may make a difference. Third, while the phrase is obviously lifted from the law of vicarious liability of master for the servant's torts, and while perhaps 90 percent of the decisions on course of employment in routine cases are interchangeable between the two fields, the analogy breaks down in certain close cases because of a fundamental difference between the two kinds of liability. In the law of respondeat superior, the harmful force is always an act of the servant, or at least an omission which is the equivalent of an act. The inquiry is whether the performance of that act was in furtherance of the master's business. But in many workmen's compensation situations, the harmful force is not the employee's act, but something acting upon the employee.
1 Larson, The Law of Workmen's Compensation, § 14.00, at 4-1 and 4-2 (1982) (emphasis in original). The differences alluded to by Professor Larson are not applicable to the facts before us in that the harmful force was clearly that of the employee. The only question then is whether the acts occurred during the course of the assailant's employment.
In the workmen's compensation setting, the question of whether an employee's assault upon another employee is a compensable injury arising out of and in the course and scope of employment is almost identical to the question of whether the assault was committed by the employee in the course of his employment, and therefore one subjecting the employer to vicarious *728 responsibility. If the origin of the assault was purely private and personal, and the employment contributed nothing to the episode, the assault is considered non-compensable. San Marco Company, Inc. v. Langford, 391 So.2d 326 (Fla. 1st DCA 1980). Similarly, if an employee's assault was solely motivated by personal reasons, having no connection with the employer's business, the doctrine of respondeat superior is inapplicable. Columbia By The Sea, Inc. v. Petty, 157 So.2d 190 (Fla. 2d DCA 1963); DeJesus v. Jefferson Stores, Inc., 383 So.2d 274 (Fla. 3d DCA 1980). Nevertheless, as other cases in both areas of the law disclose, one should not focus one's attention primarily on the factor motivating an intentional tort, "for an assault may be so closely connected with the duties of the employment that, even though motivated by reasons of malice or mischievousness, it may be impossible to show that it was not contemplated by the employment." Annot., 34 A.L.R.2d 372, 396 (1954). Thus, if the workplace contributed to the assault because of such factors as the close proximity between the claimant and the assailant, as well as the relationship between the two, and an implement used in the job facilitates the assault, the employment may be considered a contributing component, and the resulting claim compensable. Tampa Maid Seafood Products v. Porter, 415 So.2d 883 (Fla. 1st DCA 1982).
Tampa Maid relied upon the leading case of Hartford Accident and Indemnity Company v. Cardillo, 72 App.D.C. 52, 112 F.2d 11 (1940), for the proposition that even if the subject in dispute is unrelated to the employee's work, the assault may nevertheless be compensable if "the work of the participants brought them together and created the relations and conditions which resulted in the clash." 112 F.2d at 18. As a consequence, when confronted with a situation in which the injuries are the result of a co-employee's intentional tort, it is necessary for a court to determine, as did Tampa Maid and Cardillo, whether there were any factors of the employment environment which contributed to the assault. As Cardillo states:
This view recognizes that work places men under strains and fatigue from human and mechanical impacts, creating frictions which explode in myriads of ways, only some of which are immediately relevant to their tasks. Personal animosities are created by working together on the assembly line or in traffic. Others initiated outside the job are magnified to the breaking point by its compelled contacts. No worker is immune to these pressures and impacts upon temperament. They accumulate and explode over incidents trivial and important, personal and official. But the explosion point is merely the culmination of the antecedent pressures. That it is not relevant to the immediate task, involves a lapse from duty, or contains an element of volition or illegality does not disconnect it from them nor nullify their causal effect in producing its injurious consequences.
112 F.2d at 17.
The more recent trend of cases on the question of whether civil tort liability should be fastened upon the employer, caused by his employee's intentional acts, has generally followed rules used in workers' compensation cases for determining whether the injury occurred in the course of employment. Dean Prosser, while observing that if a servant, for strictly personal reasons, and not in furtherance of his employment, loses his temper and attacks the plaintiff in a quarrel, the traditional rule normally denied recovery. He continues, however, with the following observations:
There has been a tendency in the later cases, ..., to allow recovery on the ground that the employment has provided a peculiar opportunity and even incentive for such loss of temper; and there have been California decisions which have found something of an analogy to the workmen's compensation acts, and have considered that the intentional misconduct arises out of and in the course of the employment.
*729 W. Prosser, Law of Torts § 70 at 466 (4th ed. 1971) (e.s.).
If the traditional rule were followed in all cases involving sexual assaults, it would be difficult for a victim ever to recover from the employer, for such acts could hardly be considered in furtherance of the employer's business. The more recent trend of cases, as above indicated, refuses, however, to isolate the employee's motivation from other evidence going to the issue of whether the conditions of the workplace could be said to have contributed to the assaults. For example, in Lyon v. Carey, 174 U.S. App.D.C. 422, 533 F.2d 649, 651 (1976), the court held that an employer would be considered liable if an assault by an employee grew out of a foreseeable, "job-related controversy." The facts there revealed that the employee, a delivery man, had become embroiled in an altercation with the plaintiff, culminating in a sexual battery. The altercation in turn arose from a dispute over delivery of the goods. The employee demanded the balance due on the merchandise, and, at the employer's direction, had asked that it be paid in cash. The plaintiff responded that before she would pay the amount, the delivery man must bring the merchandise, a mattress and bed springs, upstairs to the apartment where they could first be inspected. A heated argument arose between the two, resulting in the sexual battery for which damages were sought. The court ruled that the source of the altercation arose from the very transaction which had brought the employee to the premises, as well as the employer's instruction to receive only cash before delivery of the merchandise. It concluded with the observations that the injury fell "within the enterprise liability"[2] of merchants in that deliverymen "are likely to be in situations of friction with their customers" and that "these foreseeable altercations may precipitate violence for which recovery may be had, even though the particular type of violence was not in itself anticipated or foreseeable." 533 F.2d at 651 (e.s.).
Later appellate cases from the District of Columbia have qualified the Lyon v. Carey test of foreseeability. Thus, International Distributing Corp. v. American District Telegraph Company, 186 U.S.App.D.C. 305, 569 F.2d 136, 139 (1977), held that an employer would be held liable if the assault by the employee grew out of a foreseeable, job-related controversy, but that foreseeability must be combined with a purpose to serve the employer's interest, i.e., the assault must be activated in part by a purpose to serve the principal. A later case, Penn Central Transportation Company v. Reddick, 398 A.2d 27, 30 (D.C.App. 1979), further amplified upon the enterprise theory of liability, advanced in Lyon v. Carey, stating:
Courts have propounded a theory termed "enterprise risk" to help determine whether an employee at the time of the tort is within the scope of his employment. This theory uses a foreseeability test and finds that the employer "cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of [his business] activities." .. . The issue, then, becomes whether the conduct in question is "so `unforeseeable' as to make it unfair to charge the [employer] with responsibility." ... Thus, "we are not looking for that which can and should reasonably be avoided, but with the more or less inevitable toll of a lawful enterprise."
Thus, an employee's conduct may be considered "foreseeable ... [if it is] within the range of responsibilities entrusted to the employee," or, in other words, "whether the `act was not unexpectable in view of the duties of the servant.'" Johnson v. *730 Weinberg, 434 A.2d 404, 408 (D.C.App. 1981) (e.s.).
The history of Minnesota case law on the subject of the master's responsibility to answer for the intentional torts of his servant has followed a similar course to that of the District of Columbia. The traditional rule in Minnesota had imposed liability on the employer only in situations where it was shown that the employee's acts were motivated by a desire to further the employer's business. That rule was discarded in Lange v. National Biscuit Company, 297 Minn. 399, 211 N.W.2d 783, 786 (1973), where it was held that "an employer is liable for an assault by his employee when the source of the attack is related to the duties of the employee and ... occurs within work-related limits of time and place... ." (e.s.) Accord, Marston v. Minneapolis Clinic of Psychiatry and Neurology, Ltd., 329 N.W.2d 306, 311 (Minn. 1983). Marston goes so far as to state that "[f]or an intentional tort, the focus is on whether the assault arises out of a dispute occurring within the scope of employment. It is irrelevant whether the actual assault involves a motivation to serve the master." Id. at 310.
Although Florida courts have not articulated the theories of liability in this area of law with the detail stated by other jurisdictions, our case law has not rejected the principle that the employment condition may be a contributing factor to the question of liability. Our courts have not accepted the principle that the employee's motive is the sole test for fixing liability upon the employer. The correct criterion is whether it can be reasonably said that the employee did that which his or her employer contemplated. Weiss v. Jacobson, 62 So.2d 904 (Fla. 1953). Parsons v. Weinstein Enterprises, Inc., 387 So.2d 1044 (Fla. 3d DCA 1980), reflects the general trend of liberality in submitting questions relating to the employer's liability to the jury: "Where there exists any evidence from which a jury could conclude that the acts ... were committed by an agent of the corporation within the scope of his employment, questions of agency and scope of employment are to be resolved by a jury." Id. at 1046. (e.s.) Accord, Saudi Arabian Airlines Corporation v. Dunn, 395 So.2d 1295, 1296 (Fla. 1st DCA 1981).
In applying the above rules to the facts of this case, it is clear that the work of the participants brought them together and created the relations and conditions which later resulted in the assaults. The close proximity between the assailant and the plaintiffs was an incidental feature of the employment relationship. The assailant, Bobby Adams, was the overseer and supervisor of nine Zippy convenience stores in the Jacksonville area. It was his responsibility to visit regularly the stores under his authority for the purpose of supervising both the store operations and personnel. His supervision included instructing store employees regarding the manner of properly stocking store shelves, performing paperwork with them and reviewing their book work. He managed, counseled and assigned work duties for store employees face-to-face. Thus, it was the unique conditions of the work place and the superior work relationship of Adams over the plaintiffs which provided him with the opportunity and incentive to carry out his sexually motivated assaults. He also inflicted his batteries on the plaintiffs while he was performing store paperwork with them.
Although the specific altercations may not themselves have been foreseeable, the nature of the employer's business was such that, given the types of duties assigned the employees, it was foreseeable that frictions might develop during the course of the employment. Thus, a jury could lawfully conclude from the record that the relationship between Adams and plaintiffs was confined to the work place, to the same extent that the trier of fact in Tampa Maid Seafood Products v. Porter had determined. As stated, Adams' control over plaintiffs' work assignments and their schedules facilitated his designs; as such his employment provided him with "a peculiar opportunity ... and incentive for... loss of temper."
*731 Just as the worker in Cardillo was required by the work place either to endure the taunts from his immediate superior or respond, as he ultimately did, in a vile manner, leading to the injuries caused by the superior's assault, so the plaintiffs in the case at bar were subjected, as a result of the employment environment, to continued sexual harassment from their supervisor. They had little control over the conditions into which they had been placed.
I do not understand the majority's affirmance of summary judgment as it relates to the count alleging the negligent hiring or retention of Bobby Adams, on the ground stated by it, that the record supporting such allegations reveals that Zippy Mart could be guilty of only simple negligence. The majority rule, which Florida follows, is that independent of the doctrine of respondeat superior, an employer may be liable for the willful tort of the employee committed against another person if he knew or should have known that the employee was a threat to others. See Williams v. Feather Sound, Inc., 386 So.2d 1238 (Fla. 2d DCA 1980); Texas Skaggs, Inc. v. Joannides, 372 So.2d 985 (Fla. 2d DCA 1979); McArthur Jersey Farm Dairy, Inc. v. Burke, 240 So.2d 198 (Fla. 4th DCA 1970). See Annot., 34 A.L.R.2d at 390. In my view, simple negligence is all that is required for an action based on negligent hiring or retention. Observe the following:
A master may be liable for injuries to a third person proximately resulting from the incompetence or unfitness of his servant, where he was negligent in selecting or retaining an incompetent or unfit servant.
* * * * * *

Retaining in employment a servant who is, or should be, known to be incompetent, habitually negligent, or otherwise unfit, is such negligence on the part of the master as will render him liable for injuries to third persons resulting from the acts of the incompetent servant, whether the master's knowledge of the servant's incompetency was actual, or direct, or constructive; the master is chargeable with knowledge of the incompetency of the servant if by the exercise of due or reasonable care or diligence he could have ascertained such incompetence.
57 C.J.S. Master & Servant § 559 (1948) (e.s. in original).
While the servant's acts, as directed against another, may be willful or intentional, there is no requirement, as stated by the majority, that an action for negligent hiring or retention be "based on wantonness, willfulness or malice of Zippy Mart." Ante at 724. Such an action may go to a jury if the evidence discloses that the employer had knowledge "of past acts of impropriety, violence, or disorder on the part of the employee [, and such] is generally considered sufficient to forewarn the employer who selects or retains such employee in his service that he may eventually commit an assault, ... ." Annot., 34 A.L.R.2d at 390. Thus it is entirely irrelevant for purposes of this tort, predicated as it is on the employer's negligence, that the assault arise from the purely personal motivations of the employee  unlike the requirement of respondeat superior that the servant's motivations be not solely personal.
For the reasons stated, while I concur in affirming summary judgment as to the counts alleging battery, I would otherwise reverse the summary judgment as to Zippy Mart and remand the case for further consistent proceedings.
SMITH, Judge, dissenting with opinion.
I dissent. I would hold that acts constituting what is now commonly referred to as "sexual harassment" were never intended to be governed by Chapter 440, Florida Statutes, and similar legislation, as interpreted and applied by the courts. I would reverse and remand to the trial court for determination of the employer's liability, or non-liability under the law applicable in tort cases.
ERVIN, C.J., and MILLS, BOOTH and ZEHMER, JJ., concur.
NOTES
[1] Appellants argue that they did advise Zippy Mart personnel of Adams' offensive behavior. However, the record does not indicate that Adams' superiors were so advised, or otherwise made aware of such behavior, until after the incidents alleged in appellants' complaints.
[1] In the workers' compensation context, the terms "accident arising out of" and "in the course of employment" are not synonymous. Arising out of is defined as meaning the origin or cause of the accident, while in the course of employment is defined as the time, place and circumstances under which the accident occurred. Bituminous Casualty Corporation v. Richardson, 148 Fla. 323, 4 So.2d 378 (1941). The early line of cases required, as a condition to recovery, that both elements be established. Travelers Insurance Company v. Taylor, 147 Fla. 210, 3 So.2d 381 (1941); Fidelity and Casualty Company of New York v. Moore, 143 Fla. 103, 196 So. 495 (1940). Although the separateness of the two elements is still recognized, later decisions do not apply the concepts entirely independently of each other, but are rather considered parts of a single test of work connectedness where the deficiencies in the strength of one factor may in fact be cured by the strength in the other. Strother v. Morrison Cafeteria, 383 So.2d 623, 626 (Fla. 1980). Thus, the fact that an employee was not injured on the premises of the place of employment does not per se bar the claimant compensation so long as it is shown that the causative factors producing the accident occurred during the time and space limits of the employment relationship. Id. at 628.
[2] The relationship between enterprise liability and respondeat superior has been described as follows:

In the final analysis, the various embellishments upon the general doctrine of respondeat superior are simply shorthand devices developed to allocate risk justly. A business should bear all risks which are normally associated with carrying on the business, but it should not be saddled with risks which arise solely by virtue of its employee's pursuit of purely personal convenience.
Davies v. United States, 542 F.2d 1361, 1364 (9th Cir.1976).