469 So.2d 155 (1985)
Vicki BROWN and Lester Paul Brown, Appellants,
v.
WINN-DIXIE MONTGOMERY, INC., Appellee.
No. AL-219.
District Court of Appeal of Florida, First District.
May 7, 1985.
*156 Michael Wm. Mead, Fort Walton Beach, for appellants.
Kenneth G. Mall, Mary Esther, Frank C. Bozeman, Pensacola, Peter W. Zinober, John P. McAdams and Jeffrey A. Cramer, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellee.
Mary Ann Stiles, Tampa, for amicus curiae Associated Industries of Florida, Inc.

ON REHEARING EN BANC
PER CURIAM.
A majority of the court has determined to grant rehearing en banc pursuant to Fla.R.App.P. 9.331(c) and to substitute this opinion on rehearing for the panel's opinion previously issued, 427 So.2d 1065 (Fla. 1st DCA 1983).
Vicki Brown and her husband appeal from the trial court's order granting Winn-Dixie's motion for summary judgment. The trial court ruled that the Browns' tort claims[1] against Winn-Dixie are barred by the exclusivity provisions of the Florida Workers' Compensation Act, Section 440.11(1), *157 Florida Statutes (1979).[2] The court did not grant summary judgment in favor of Winn-Dixie supervisor Jack Blaich, the other defendant. We agree with the trial court that such claims are barred as against the employer, Winn-Dixie.
This action instituted by the Browns arose out of an incident which occurred on November 18, 1980, when Mrs. Brown was on duty as an employee at a Winn-Dixie grocery store in Mary Esther, Florida. According to Mrs. Brown, a male supervisor, Jack Blaich, "reached over and grabbed her breast" during a discussion of store business. There is evidence that Winn-Dixie had been made aware of previous similar acts by Blaich against other female employees. No relationship existed between Blaich and Mrs. Brown outside the work setting. As a result of the incident, Mrs. Brown claims to have suffered mental anguish and instituted suit against Winn-Dixie and Blaich alleging the torts of battery and intentional infliction of mental distress.
Initially, we reject appellants' contention that Winn-Dixie is not immunized because of an exception recognized where the injury is caused by an intentional act of the employer. Appellants are not entitled to the benefit of that exception since the actor in the case at bar was only a supervisor. Although the appellants claim that Winn-Dixie was aware of a propensity of Blaich to commit such acts, such awareness does not bring this case within the above exception. We note with approval Professor Larson's observation:
When the person who intentionally injures the employee is not the employer in person nor a person who is realistically the alter ego of the corporation, but merely a foreman, supervisor or manager, both the legal and moral reasons for permitting a common-law suit against the employer collapse, and a substantial majority of modern cases bar a damage suit against the employer.
2A Larson's Workmen's Compensation law, Section 68.21 (1982). Moreover, although the complaint contains an allegation to the effect that Winn-Dixie expressly or impliedly authorized Blaich to commit the subject act, it is clear from the record that such was not the case and that there is no genuine issue with respect thereto, or with respect to any intentional conduct of the employer. And if we were to construe appellant's complaint, which as we have noted appears to be based upon intentional tort causes of action, as alleging against Winn-Dixie a cause of action in negligence, that is, negligent retention of a dangerous employee, see 2 Fla.Jur.2d Agency and Employment § 211, the appellants would fare no better regardless of the degree of such negligence. The workers' compensation immunity provision applies regardless of the degree of an employer's negligence.
An employer under this Act is not liable in tort to employees by virtue of the express language of the Act. Such immunity is the heart and soul of this legislation which has, over the years been of highly significant social and economic benefit to the working man, the employer and the State. And, whether the injury to the employee is caused by "gross negligence," "wanton negligence," "simple negligence" passive or active, or no negligence at all of the employer, is of no consequence. There is no semblance of suggestion in these statutes that the Legislature intended to make any distinction in degrees of negligence so far as the employer's immunity is concerned and we see no reason or logic in any distinction.
Seaboard Coast Line Railroad Company v. Smith, 359 So.2d 427, 429 (Fla. 1978). See also Coney v. International Minerals & Chemical Corporation, 425 So.2d 171 (Fla. 2nd DCA 1983).
*158 Appellants next contend that since Blaich's actions constitute intentional torts, the incident which caused the damages complained of by Mrs. Brown cannot be regarded as an accident and, therefore, the workers compensation law is not applicable. Such contention is without merit. In a number of prior decisions, assaults and intentional torts have been held to be compensable as accidents arising out of and in the course of employment. See Hill v. Gregg, Gibson & Gregg, Inc., 260 So.2d 193 (Fla. 1972) (superintendent severely assaulted claimant after firing him); Tampa Maid Seafood Products v. Porter, 415 So.2d 883 (Fla. 1st DCA 1982) (claimant stabbed by fellow employee); Prahl Bros., Inc. v. Phillips, 429 So.2d 386, 387 (Fla. 1st DCA 1983) (claimant robbed by intruder).
Of course, if the origin of the assault is not the employment, then the assault cannot be regarded as arising out of the employment.
[W]hen it is clear that the origin of the assault was purely private and personal, and that the employment contributed nothing to the episode, whether by engendering or exacerbating the quarrel or facilitating the assault, the assault should be held non-compensable... .
San Marco Co., Inc. v. Langford, 391 So.2d 326, 327 (Fla. 1st DCA 1980) (claimant shot at work by co-employee after they had quarreled the previous night); see also Lainhart & Potter v. Holland, IRC Order 2-3005 (1975) (origin of assault not the employment where, in love triangle, claimant was shot at work by former co-employee); Ivy H. Smith Company v. Wingo, 404 So.2d 1118 (Fla. 1st DCA 1981). The facts in those cases are patently distinguishable from those in the case at bar. There can be little doubt that the attack on Mrs. Brown arose out of her employment.
Appellants also argue that because of the nature of the act by Blaich and the type of injuries claimed by Mrs. Brown, there can be no workers compensation coverage and exclusivity does not therefore apply. Appellants point to Section 440.02(18), Florida Statutes (1979):
"Accident" means only an unexpected or unusual event or result, happening suddenly. A mental or nervous injury due to fright or excitement only ... shall be deemed not to be an injury by accident arising out of the employment. (Emphasis supplied.)
Mrs. Brown claims damages for emotional distress which she says that she suffered as a direct result of her supervisor's grabbing her breast. Although Mrs. Brown's claim was indeed for damages for "mental or nervous injury," it was not "due to fright or excitement only." (Emphasis supplied.) To the contrary, her injuries resulted from a battery by her supervisor.
Florida courts have recognized that mental distress or psychiatric disorders which are caused by a blow or some other type of physical contact are covered injuries under Chapter 440 even where the physical contact is relatively minor. In Watson v. Melman, Inc., 106 So.2d 433 (Fla. 3rd DCA 1958), cert. den. 111 So.2d 40 (Fla. 1959), the employee was working at a sewing machine when one of her co-workers tossed a light cardboard spool (weighing 8 1/2 ounces) towards a nearby trash receptacle. Instead, the spool struck the claimant behind the ear. "[O]ther than a slight discoloration of the skin, no sign was left upon the area where the blow struck." 106 So.2d at 434. Although sustaining no other injury or disability, the employee claimed compensation benefits for a neurosis which developed directly from the trauma of the accident. It seems that her teenage son had previously died from a blow to the head, and the accident accordingly took on "symbolic significance." The court reversed the Industrial Commission's determination that the claim should be dismissed because "fright alone does not constitute an injury by accident." 106 So.2d at 434. The court reinstated the deputy commissioner's compensation award. See also Lyng v. Rao, 72 So.2d 53 (Fla. 1954); Prahl Bros., Inc. v. Phillips, supra (disabling psychiatric impairment resulting from armed robbery involving handgun being placed to claimant's head and ring being removed from her *159 finger); compare Williams v. Hillsborough County School Board, 389 So.2d 1218 (Fla. 1st DCA 1980); Indian River County Sheriff's Department v. Roske, 417 So.2d 1161 (Fla. 1st DCA 1982).
We conclude that Blaich's act of impermissibly and offensively grabbing Mrs. Brown's breast was the kind of physical injury or trauma sufficient to support a workers compensation claim for mental distress or injury directly resulting therefrom.[3] The fact that Mrs. Brown's mental distress or injury might not be of sufficient severity or quality so as to actually qualify for benefits under the worker's compensation law is of no moment. As this court stated in Grice v. Suwannee Lumber Mfg. Co., 113 So.2d 742, 746 (Fla. 1st DCA 1959):
Every accidental injury suffered by an employee which arises out of and in the course of his employment is within the scope of the Act if it is of such character that it results, or might have resulted, in a loss or diminution of earning capacity, either temporary or permanent, or for which the employer is obligated to furnish medical or other benefits. The fact that in a particular case the injury suffered does not in fact result in a loss of diminution or earning capacity is immaterial. (e.s.)
She was, therefore, precluded under Section 440.11, Florida Statutes (1979), from pursuing her common law remedies except as to the defendant Blaich.[4]
[T]he concept of exclusiveness of remedy embodied in Fla. Stat. § 440.11, F.S.A. appears to be a rational mechanism for making the compensation system work in accord with the purposes of the Act. In return for accepting vicarious liability for all work-related injuries regardless of fault, and surrendering his traditional defenses and superior resources for litigation, the employer is allowed to treat compensation as a routine cost of doing business which can be budgeted for without fear of any substantial adverse tort judgments. Similarly, the employee trades his tort remedies for a system of compensation without contest, thus sparing him the cost, delay and uncertainty of a claim in litigation.
Mullarkey v. Florida Feed Mills, Inc., 268 So.2d 363, 366 (Fla. 1972); see also Chorak v. Naughton, 409 So.2d 35, 38 (Fla. 2nd DCA 1981).
Appellants also contend that even if summary judgment may have been appropriate as to the count alleging a cause of action for battery, the same result should not obtain with respect to the intentional infliction of mental distress count. Appellants argue that such tort requires no physical injury, trauma or touching and that the essential elements of such tort should govern the determination of whether workers compensation exclusivity applies. We disagree. Regardless of what label we place on the tort, the fact is that the act which appellants claim directly caused the mental distress for which damages are sought is the act of grabbing Mrs. Brown's breast. Appellants' tort claims based thereon are barred by Section 440.11.
The judgment appealed is AFFIRMED.
SHIVERS, JOANOS, THOMPSON, WIGGINTON and NIMMONS, JJ., concur.
WENTWORTH, J., concurs specially with opinion.
ERVIN, C.J., concurring in part and dissenting in part with opinion.
*160 SMITH, J., dissents with opinion, in which MILLS, BOOTH and ZEHMER, JJ., concur.
MILLS, J., dissents with opinion in which BOOTH, J., concurs.
WENTWORTH, Judge, specially concurring.
I concur in the result reached by the majority. Although the complaint against Winn-Dixie may be predicated upon an allegation of intentional tort, the record presents no material issue with regard to any conduct on the part of Winn-Dixie which might support a finding of willful intent.[1]
Were this case one involving prior notice of specific acts, and employer response thereto, which might support a finding of inferred willfulness, I do not think that the broad statement found in Larson, at § 68.21, quoted in the majority opinion, would be applicable. While the legal and moral reasons for allowing a civil suit may collapse when a corporate employer has no prior notice of an employee's offensive propensities, as is generally the case when an injury results from an isolated incident of assaultive behavior, that rationale does not extend to situations where the employer knows of persistent abusive behavior and passively condones its continuance.
The extension of statutory immunity to civil actions for willful conduct could effectively result in a license for employers to permit harassment with virtual impunity, since sexual harassment will not ordinarily result in injuries for which compensation is provided under Chapter 440, Florida Statutes, even when the statute is deemed applicable. The declared purpose of compensation provisions do not require that result, and I perceive no legislative intent to shield employers, individual or corporate, from direct civil liability for intentional torts or actions based on employer conduct which might inferentially support a finding of willful intent.
ERVIN, Chief Judge, concurring in part and dissenting in part.
Except for the very limited remedies available to appellants under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, et seq. 1976), and under the Florida Human Rights Act (section 23.161, et seq. Florida Statutes (renumbered as 760.01 et seq., Florida Statutes, 1983)), the majority's opinion has effectively precluded any recovery for compensation arising from sexual harassment claims in those instances where physical contact has occurred, but without the victim's suffering any resulting physical injury requiring medical treatment, or mental disability. My disagreement with the majority centers primarily upon its conclusion that the injury, which gave rise to appellants' tort action sounding in the intentional infliction of emotional distress, was covered by the act because it ensued from the forced physical contact by Vicki Brown's supervisory employer. In my judgment, this is the threshold question to the determination of coverage, and all other issues  whether the supervisor can be considered the alter ego of the corporation, whether the assault was one arising out of the employment  are incidental to the essential question of whether the character of the injury itself is such as to make it subject to the act's coverage. After a careful reading of the statutes involved, I am convinced that the type of harm inflicted upon appellant Vicki *161 Brown was not intended by the legislature to be subjected to the act's protections.
The exclusivity provisions of section 440.11(1), insofar as they are material to the case at bar, state: "The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer to any third-party tortfeasor and to the employee, ... and anyone otherwise entitled to recover damages ... on account of such injury or death... ." (e.s.) Section 440.10 places on the employer the responsibility for furnishing compensation benefits to the employee, as provided under sections 440.13, 440.15 and 440.16 of the act. Section 440.13 generally describes the employer's liability for medical services to the injured employee, section 440.15, disability benefits, including permanent total, temporary total and wage-loss, while section 440.16 provides death compensation benefits to designated survivors. Thus, the entire thrust of Florida's Workers' Compensation Act is to furnish compensating benefits to the injured worker or his survivor when the injury is followed by medical care, physical or mental disability, or death. Appellants never asserted nor claimed any such damages in their common law action. Their injury was one involving only nondisabling mental distress. As such, the injury falls beyond the parameters of the act.
The definition of injury itself supports this conclusion. Section 440.02(6) states in part: "The term `injury' means personal injury or death by accident arising out of and in the course of employment. ..." (e.s.) Obviously, if the injury is not one "by accident arising out of and in the course of employment", it is not a covered injury. The definition of accident convincingly demonstrates that it is not. "`Accident' means only an unexpected or unusual event or result, happening suddenly. A mental or nervous injury due to fright or excitement only, ..., shall be deemed not to be an injury by accident arising out of the employment." Section 440.02(18) (e.s.). The majority states, however, that the accident was not one caused by fright or excitement only, because the mental distress was accomplished by an intentional battery. This conclusion overlooks the fact that the battery caused neither physical trauma[1] nor residual mental disability. If the injury were carried out by verbal threats or obscene gestures, unaccompanied by any physical contact, presumably the majority would agree that such conduct falls outside the act's coverage pattern. It is on this rather technical basis that the common law tort action is said to be barred.
Even if it were conceded that the majority's position is correct, i.e., that the injury was not caused solely by fright or excitement, but by an intentional battery as well, this would not require a holding that the injury was one confined within the provisions of the act, for the simple reason that no compensating remedy is provided for an injury of this character. The majority's reasoning does not take into account the unique quality of the tort designated as the intentional infliction of mental distress. As we observed in Ford Motor Credit Co. v. Sheehan, 373 So.2d 956, 959 (Fla. 1st DCA 1979), the existence of severe emotional injury may be established without any manifestation of bodily harm. And "the `character of the defendant's conduct is in itself important evidence that the distress has existed.'" Id. (quoting from Restatement (Second) of Torts § 46 comment j (1965)) Thus, proof of the tort may be substantiated simply by the victim's averments of mental distress, as well as by the degree of conduct intentionally inflicted by the defendant. *162 Sheehan at 959. Accord Metropolitan Life Insurance Co. v. McCarson, 467 So.2d 277 (Fla. 1985). Consequently, no showing of physical, or, indeed, disabling mental condition is required as a predicate to the bringing of such action. It is this attribute, peculiar to the tort, that causes the injury to fall outside the ambit of chapter 440.
Florida jurisprudence is replete with cases holding that it is only those injuries for which the act furnishes a remedy that are protected. Thus, in Grice v. Suwannee Lumber Manufacturing Company, 113 So.2d 742, 746 (Fla. 1st DCA 1959), the following test was employed in determining whether the injury claimed was covered by the act: "Every accidental injury suffered by an employee which arises out of and in the course of his employment is within the scope of the Act if it is of such character that it results, or might have resulted, in a loss or diminution of earning capacity, either temporary or permanent, or for which the employer is obligated to furnish medical or other benefits." Id. (e.s.) This view has long been countenanced by the Florida Supreme Court: "The theory of the Workmen's Compensation Law is that one recovers compensation when there is an impairment of earning capacity or when by accident or otherwise, he brings himself within one or more of the categories of disability defined therein... . If relief is not provided within the bounds of these statutes, it cannot be recovered in an action under the Workmen's Compensation Law." Rosier v. Roofing & Sheet Metal Supply Co., 41 So.2d 308, 309 (Fla. 1949) (e.s.). Obviously, if no relief is available to one who asserts injury, the worker should be free to pursue his or her tort remedies. Cf. Williams v. Hillsborough County School Board, 389 So.2d 1218, 1219 (Fla. 1st DCA 1980); Davis v. Sun Banks of Orlando, 412 So.2d 937 (Fla. 1st DCA 1982).
This view is endorsed by Professor Larson, who states that "[w]hen no compensation remedy is available, these tort actions [those involving non-physical injury torts, such as false imprisonment, libel, malicious prosecution, fraud, deceit, and intentional infliction of emotional distress] fall squarely within the broad class of cases ... which do not come within the fundamental coverage pattern of the Act at all, ... ." 2A Larson The Law of Workmen's Compensation, § 68.30 at 13-40 (1982) (e.s.) [hereinafter: Larson]. Larson therefore advocates that an employee should be allowed to seek in a judicial forum his common law remedy of the intentional infliction of emotional distress, even though the employer did not personally inflict the distress  rather its supervisor  if bodily harm does not come into play. Id. He approves the result reached in Ritter v. Allied Chemical Corporation, 295 F. Supp. 1360 (D.S.C. 1968), aff'd., 407 F.2d 403 (4th Cir.1969), which subjected the employer to an action charging assault, inflicted by one of the employer's supervisory employees on the plaintiff-employee. The assault caused only a scratch on the plaintiff's hand, as well as minor soreness, but did not result in any disability or other elements which might have provided the injured employee compensation under the workmen's compensation laws of South Carolina. To the same general effect, see also Hamilton v. East Ohio Gas Co., 47 Ohio App.2d 55, 351 N.E.2d 775 (1973); Baker v. American States Ins. Co., 428 N.E.2d 1342 (Ind. App. 1981); McGee v. McNally, 119 Cal. App.3d 891, 174 Cal. Rptr. 253 (1981).
Larson concludes with the following summary:
If the essence of the tort, in law, is non-physical, and if the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a makeweight, the suit should not be barred. But if the essence of the action is recovery for physical injury or death, the action should be barred even if it can be cast in the form of a normally non-physical tort.
Larson supra, § 68.34(a) at 13-62  13-63.
Larson's analysis is altogether compatible with the Florida Workers' Compensation Act and cases interpreting it. Those *163 cases cited in the majority's opinion, i.e., Watson v. Melman, Inc.; Prahl Bros., Inc. v. Phillips; Williams v. Hillsborough County School Board, etc., are factually distinguishable in that they all involved claims for disabling mental conditions, which were deemed either covered or not by chapter 440, depending on whether the condition followed actual physical contact. As stated, physical contact occurred here, but without any resultant injury for which the act provides a remedy.
I am also of the view, for the reasons stated in my dissent in Schwartz v. Zippy Mart and Esses v. Zippy Mart, Inc., 470 So.2d 720 (Fla. 1985), that the employer must be considered vicariously liable for the intentional torts of his supervisory employee.
I do not believe, however, that appellants have limited themselves only to a theory of liability predicated on respondeat superior. As the majority has acknowledged, appellants have attempted to state in their complaint the tort of negligent retention of a dangerous employee. Among other things it was alleged that the employer was aware of similar past improprieties committed by Blaich "and was well aware of defendant Blaich's propensity to commit similar acts in the future." There was evidence in the record from which a jury could have so found. For example, when the victim's husband reported the fondling incident to the employer's regional manager, Theodore Moon, the husband testified that Moon had informed him that Blaich had "a problem and had had a problem in the past ... [and] [t]his is just icing on the cake." Moon in fact admitted that two months before the incident in question, he had been advised by a store employee that another female employee had quit her employment because Blaich had become "fresh" with her. He further admitted that he had not attempted to contact the former employee to determine the accuracy of the charges.
Independent of the theory of respondeat superior there exists in Florida the tort of the employer's negligence in hiring or retaining an employee once the employer has been placed on notice of the harmful propensities of the employee. Williams v. Feather Sound, Inc., 386 So.2d 1238 (Fla. 2d DCA 1980), rev. denied, 392 So.2d 1374 (Fla. 1981). See also other authorities listed in my dissent in Schwartz v. Zippy Mart. If the majority is concerned that appellants have not pled with specificity the allegations comprising the elements of the tort, at the very minimum it should remand with directions that they be given an opportunity to do so.
Following Professor Larson's analysis, however, I would agree with the majority in affirming the lower court's judgment relating to the count alleging the commission of battery. As this tort is not one which has as its essence an absence of physical injury, it is therefore one that ordinarily would be covered by the act.
SMITH, Judge, dissenting with opinion.
I dissent. I would hold that acts constituting what is now commonly referred to as "sexual harassment" were never intended to be governed by Chapter 440, Florida Statutes, and similar legislation, as interpreted and applied by the courts. I would reverse and remand to the trial court for determination of the employer's liability, or non-liability under the law applicable in tort cases.
MILLS, BOOTH and ZEHMER, JJ., concur.
ERVIN, C.J., concurs and dissents with separate opinion.
MILLS, Judge, dissenting:
I dissent.
I adhere to my opinion filed in the above appeal on 9 March 1983 and to my concurring in part and dissenting in part opinion filed in the above appeal on 27 June 1983.
I join the present dissent by Judge L.G. Smith.
NOTES
[1] Mr. Brown's claims were derivative only for loss of consortium. See Gates v. Foley, 247 So.2d 40 (Fla. 1971); Gold v. Cheker Oil Company, 438 So.2d 1009 (Fla. 4th DCA 1983).
[2] 440.11 Exclusiveness of Liability

(1) The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer to any third-party tortfeasor and to the employee, the legal representative thereof, husband or wife ... and anyone otherwise entitled to recover damages from such employer ... on account of such injury or death... .
[3] Our opinion should not be construed as a holding that any impermissible touching is to be regarded as a physical injury or trauma sufficient to support a workers compensation claim for mental distress or injury directly resulting from such impermissible touching.
[4] Although we have no occasion to determine whether Blaich would be entitled to assert workers compensation exclusivity, it would appear that the following provisions of Section 440.11(1) would preclude such assertion.

"* * * Such fellow-employee immunities shall not be applicable to an employee who acts, with respect to a fellow employee, with willful and wanton disregard or unprovoked physical agression or with gross negligence... ."
[1] The record indicates that upon being advised of the present complaint a supervisor suggested that Blaich had a "problem." But no further inquiry was then made of the supervisor, and neither the nature of this "problem," nor the basis for such conclusion, was specified or otherwise explained. The record also indicates that on only one prior occasion had Blaich's superiors at Winn-Dixie been made aware of a potentially similar incident. The head cashier advised a store supervisor of a rumor that a female employee may have quit because Blaich had been "fresh." The supervisor asked the head cashier to personally contact the former employee and attempt to ascertain the truthfulness of this rumor. The former employee was thus contacted, but she declined to discuss details regarding the termination of her employment and the rumor remained unsubstantiated.
[1] This distinguishes Brown's injury from that of the claimant's in Williams v. Hillsborough County School Board, 389 So.2d 1218 (Fla. 1st DCA 1980), which barred a worker's compensation claim for disability resulting from mental depression unaccompanied by "physical trauma" or "actual physical injury." Certainly the barest physical contact, such as that involved in the case at bar, cannot logically be considered either a physical trauma or actual physical injury. Admittedly a physical trauma need not manifest itself visibly, Lyng v. Rao, 72 So.2d 53 (Fla. 1954), but when a disabling condition immediately follows a nonvisible, substantial force (in Lyng, a strike by lightning), it may be deemed a covered injury.