490 So.2d 972 (1986)
Wilmon N. SHEPPARD, Appellant,
v.
CITY OF GAINESVILLE POLICE DEPARTMENT and Crawford & Company, Appellees.
No. BJ-68.
District Court of Appeal of Florida, First District.
June 10, 1986.
Barry D. Graves, of Ritch & Graves, P.A., Gainesville, for appellant.
Jack A. Langdon, of Jack A. Langdon, P.A., Gainesville, for appellees.
WIGGINTON, Judge.
This workers' compensation appeal is from the deputy commissioner's order denying a claim for benefits on the basis that there was no compensable injury. Appellant Sheppard challenges the deputy commissioner's finding that claimant's psychiatric disability resulted from fright or excitement only and that there was a failure of proof of actual physical injury. We agree with claimant and remand for further consideration.
In September, 1972, while in the course of his employment as a Gainesville policeman, claimant was required to take another man's life in order to save a fellow officer. Following that incident claimant returned to work and ultimately to the road patrol *973 as a sergeant. He experienced a preoccupation with recalls of the incident and suffered disorienting periods of disassociation. He continually feared that he would have to face another situation in which he might have to shoot someone.
On August 10, 1984, claimant was dispatched to the scene of an accident involving a bicyclist. According to claimant, the victim was lying on the ground apparently stunned or unconscious. As claimant bent over him to render aid, the victim suddenly became combative, came off the ground and lurched sideways toward claimant in a violent manner. Claimant put up his hands to defend himself and catch the victim who grabbed claimant on his upper right arm and snatched his shoulder. Claimant further testified that the victim had a piece of flesh torn from his head, blood was pouring out, and his eyes were big like the man claimant had killed in 1972. Claimant had a flashback of that incident and wondered if he was going to have to kill this man also. Claimant went on with his duties to assist Officer Johnson and the ambulance personnel in subduing the man, wrestling him to the ground, and ultimately tying him up with gauze so he could be placed on the stretcher.
Claimant broke down following the incident and felt sick. The place on claimant's arm where the man grabbed him allegedly became blue and bruised. Claimant and his wife testified that the bruises lasted for several days, although claimant did not consider the injury to his arm to be significant and sought no medical treatment.
Officer Johnson testified that he was first on the scene closely followed by the ambulance people and claimant, who was the backup officer. They discovered that the victim was intoxicated, had fallen off his bicycle into the roadway but had not been struck by a car. He was erratic and started cursing and spitting at the ambulance personnel. The officers moved the victim from the roadway onto the shoulder where they laid him down. The officers assisted in attempts to put the individual on the stretcher, but he came to his feet, stood up, and attempted to walk away. The victim continued to try to push the officers out of the way so that he could leave. The officers found they had to hold the victim's arms in order that he be restrained and were required to assist in holding the victim down while he was being strapped onto the stretcher.
Johnson testified that he did not ever see the victim grab claimant and maintained that he was watching all the time. Officer Johnson also explained that the man never physically struck either one of the officers but that he was only pushing away. Johnson testified that after the incident claimant "appeared to have some kind of change that came over him."
Claimant returned to relaxed duty with the Gainesville Police Department until he subsequently suffered a breakdown and could not go to work. He sought medical advice from Dr. Charles T. Fletcher, who neither recalled nor recorded any complaints of anything to do with physical injury to claimant's right arm or shoulder. The only history obtained from claimant was of the earlier 1972 incident. Claimant was referred by Dr. Fletcher to Dr. Asa Godbey, a psychiatrist, who was of the opinion that claimant suffers from a post traumatic stress disorder which includes permanent elements of anxiety and depression. Claimant remains under the treatment of Dr. Godbey.
Dr. Godbey's opinion was that within reasonable medical probability, the incident of August 10, 1984, exacerbated the preexisting psychiatric condition and that this exacerbation caused the present disability. Dr. Godbey then was questioned concerning the cause of the aggravation and he testified as follows:
Question: Now, you indicated that in the history that he gave you that this man, relating to the August `84 episode, grabbed him and stared at him, looked him the eye, are both of these two events, the grabbing and the staring significant in your opinion as to his problem? *974 Answer: Yes, the two events together is what caused his reaction; in other words, when the man turned and grabbed him and looked into his eyes, apparently, his eyes large and probably pupils dilated, and then grabbing him which he interpreted, you know, as a threat to him, the two together were reminiscent of the episode in `72 which is what triggered off his response.
Question: And you can't separate the two as far as their causal effect upon his present condition?
Answer: No, they are together. (R-156).
The deputy commissioner found that claimant's injury was due to fright or excitement only and denied all benefits. He further predicated his findings as to injury by fright or excitement only on the basis that there was no proof of actual physical injury. This appeal followed.
Appellant's position is that the trauma need not be significant and it is not the extent of the trauma that is determinative of the issue but the causal relationship between that trauma and the psychiatric injury, relying particularly upon Prahl Brothers, Inc. v. Phillips, 429 So.2d 386 (Fla. 1st DCA 1983). Appellee asserts that the claimant did not actually sustain an "injury" of a physical nature to his arm or shoulder such as would support a claim for resulting psychiatric disability and impairment.
Section 440.02(1) of the Workers' Compensation Law excludes from the definition of accident "a mental or nervous injury due to fright or excitement only" which "shall be deemed not to be an injury by accident arising out of the employment." We are instructed in Williams v. Hillsborough County School Board, 389 So.2d 1218 (Fla. 1st DCA 1980), that there must be an actual physical injury upon which to predicate compensation to a worker suffering neurosis. This rule was dutifully in the mind of the deputy commissioner at the time of resolving this issue and when he relied upon the several cases cited in his order. In application of the referenced statutory guide, all actions of the claimant and victim are excluded except for the single isolated incident of the victim looking claimant in the eyes and instantaneously lurching at claimant from his sitting position on the shoulder of the road. It was then that claimant suffered the flashback relating this victim to the individual that he had to kill in the line of duty some twelve years before.
As to this event, there is no issue of credibility or contradiction. Claimant related the event as happening and Officer Johnson simply had no recollection of such taking place during the time he was at the scene of the accident performing his investigative duties and otherwise having charge of the situation. The deputy commissioner did not reject claimant's testimony in whole or in part by the language of his order but merely found that claimant's nervous or mental injury was based upon fright or excitement alone and that there was failure of proof of "actual physical injury."
We agree with appellant's analysis of Dr. Godbey's medical opinion that claimant's psychiatric disability is not due to fright or excitement only but results from the combination of the fright and excitement and the trauma of being grabbed by the accident victim. These two events, inseparably, are the proximate cause of the exacerbation and aggravation of his preexisting psychiatric condition.
A close examination of both Johnson's and claimant's versions of the incident shows consistency as to the victim's combativeness and the struggle to restrain him. Even Johnson's testimony directs a conclusion that claimant was at least touched on several occasions during the fray. In Prahl Brothers, the claimant, a hotel switchboard operator, during the course of a robbery, had a handgun placed to her head, a ring physically removed from her finger, and was forcibly made to *975 lie on the floor. As Judge Wentworth wrote:
Although claimant sustained no visible contusion or immediate physical disability as a result of this incident, she soon thereafter developed a disabling psychiatric impairment. Testimony of claimant's treating physician clearly established that this psychiatric impairment was precipitated by the employment-related robbery, and that a gun being placed to her head and a ring being physically removed from her finger were significant circumstances in the causal etiology of claimant's mental injury... .
It is well established that compensation for neurosis must be predicated upon an underlying physical injury or trauma. [Citations omitted.] However, the underlying physical injury or trauma need not be itself disabling for the ensuing mental or nervous injury to be compensable. [Citation omitted.]
It does not appear from the deputy commissioner's order or other portions of the record that he had the benefit of this Court's Prahl Brothers opinion, which must be considered in final resolution of this claim.
This case is reversed and remanded to the deputy commissioner for further consideration of the facts and his findings in light of Prahl. In his discretion, the deputy may conduct further proceedings.
SMITH and JOANOS, JJ., concur.