552 So.2d 1099 (1989)
Penny BYRD, et al., Petitioners,
v.
RICHARDSON-GREENSHIELDS SECURITIES, INC., Etc., et al., Respondents.
No. 72788.
Supreme Court of Florida.
October 26, 1989.
Rehearing Denied December 19, 1989.
Robert E. Weisberg, David M. Lipman and Stefan Ruud of Lipman & Weisberg, Miami, and Rochelle Z. Catz, Ft. Myers, for petitioners.
Terence G. Connor of Morgan, Lewis & Bockius, Miami, for respondents.
Nancy P. Maxwell and Mark Wayne Klingensmith of Metzger, Sonneborn & Rutter, P.A., West Palm Beach, amicus curiae for Florida Defense Lawyers Ass'n.

CORRECTED OPINION
BARKETT, Justice.
We have for review Byrd v. Richardson-Greenshields Securities, Inc., 527 So.2d 899, 902 (Fla. 2d DCA 1988), which certified "the contention in this case concerning the exclusivity of worker's compensation benefits." The case presents the following question of law:[1]

*1100 WHETHER THE WORKERS' COMPENSATION STATUTE PROVIDES THE EXCLUSIVE REMEDY FOR A CLAIM BASED ON SEXUAL HARASSMENT IN THE WORKPLACE.
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in the negative and quash the opinion below.
The plaintiffs, all female employees, brought claims for assault and battery, intentional infliction of emotional distress, and negligent hiring and retention of employees. These claims were based on incidents in which male employees repeatedly touched the women and made verbal sexual advances on them in the workplace during work hours. In their suit, the women claimed this resulted in emotional anguish and stress.
The trial court dismissed the complaint on grounds that the workers' compensation statute provided the exclusive remedy for the women. On appeal, the Second District affirmed.
Our analysis must begin with the premise, now well established in our law, that workers' compensation generally is the sole tort remedy available to a worker injured in a manner that falls within the broad scope and policies of the workers' compensation statute. American Freight System, Inc. v. Florida Farm Bureau Casualty Ins. Co., 453 So.2d 468, 470 (Fla.2d DCA 1984). Indeed, section 440.11, Florida Statutes (1987), provides that workers' compensation is the exclusive remedy and is "in place of all other liability of such employer ... on account of such injury or death." This statute expresses a plain legislative intent that any potential liability arising from "injury or death" is abolished in favor of the exclusive remedy available under workers' compensation. However, if the liability arises from something other than "injury or death," the other potential bases of liability remain viable.
Thus, the definition of the word "injury" is crucial to the determination of this case.[2] That definition is provided in the statute itself. Section 440.02(14), Florida Statutes (1987), states that "injury" means "personal injury ... by accident arising out of and in the course of employment, and such diseases or infection as naturally or unavoidably result from such injury" (emphasis added). Moreover, section 440.02(1), Florida Statutes (1987), defines "accident" as "only an unexpected or unusual event or result, happening suddenly."
It is apparent, however, that the term "accident arising out of... employment" has been construed well beyond the more limited definition suggested by the statutory language. This judicial extension of the statutory language is in keeping with the liberal construction accorded the workers' compensation statute, see Wick Roofing Co. v. Curtis, 110 So.2d 385 (Fla. 1959); C.F. Wheeler Co. v. Pullins, 152 Fla. 96, 11 So.2d 303 (1942), and has affected both the terms "accident" and "arising out of."
As far back as the case of Czepial v. Krohne Roofing Co., 93 So.2d 84, 85-86 (Fla. 1957), for instance, the Court recognized that an injury was compensable under the statute even though caused by the gradual accumulation of otherwise insignificant injuries arising from repeated exposure to somewhat noxious substances at the workplace. Accord Worden v. Pratt & Whitney Aircraft, 256 So.2d 209 (Fla. 1971). This is true even though, strictly speaking, a cumulative injury of this type is not an "accident" within the dictionary definition of the word.[3]
In a similar manner, the Court has accepted that even a suicide precipitated by serious workplace injuries can be compensable. Whitehead v. Keene Roofing Co., 43 So.2d 464 (Fla. 1949). We have qualified this statement only by requiring that the suicide must arise from a mental disturbance directly attributable to an actual workplace injury. Id.
*1101 An analogous line of cases has held that severe emotional disorders also may be compensable where caused by actual physical injury at the workplace.[4]E.g., Sheppard v. City of Gainesville Police Dep't, 490 So.2d 972, 974-75 (Fla. 1st DCA 1986); Prahl Bros., Inc. v. Phillips, 429 So.2d 386 (Fla. 1st DCA), review denied, 440 So.2d 353 (Fla. 1983). This is not true, however, where no physical injury has occurred, since the statute by its own terms excludes such matters. E.g., Superior Mill Work v. Gabel, 89 So.2d 794 (Fla. 1956); Davis v. Sun Banks, 412 So.2d 937, 937 (Fla. 1st DCA), review denied, 419 So.2d 1196 (Fla. 1982); Williams v. Hillsborough County School Bd., 389 So.2d 1218, 1219 (Fla. 1st DCA 1980), review denied, 397 So.2d 780 (Fla. 1981). Indeed, the statute expressly prohibits a workers' compensation award for "[a] mental or nervous injury due to fright or excitement only." § 440.02(1), Fla. Stat. (1987).
Similarly, Florida courts have extended the definition of "accident arising out of ... employment" to encompass a wide variety of injuries caused by intentional torts, provided there is a sufficient nexus with the activities of the workplace itself. This is true where workplace tensions lead one employee to assault another, W.T. Edwards Hospital v. Rakestraw, 114 So.2d 802, 803 (Fla. 1st DCA 1959), where jealousy over a lovers' triangle causes one worker to attack another with a workplace tool, Tampa Maid Seafood Products v. Porter, 415 So.2d 883, 885 (Fla. 1st DCA 1982), where an employee is robbed at the workplace by an armed gunman, Prahl Brothers, Inc. v. Phillips, 429 So.2d 386, 387 (Fla. 1st DCA), review denied, 440 So.2d 353 (Fla. 1983), and where a worker is robbed at home by persons seeking workplace cash register receipts.[5]Strother v. Morrison Cafeteria, 383 So.2d 623 (Fla. 1980).
In a recent extension from this prior line of cases, the First District has held that sexual harassment claims are governed by the same general principles. Thus, in Brown v. Winn-Dixie Montgomery, Inc., 469 So.2d 155, 159 (Fla. 1st DCA 1985), the district court concluded that the workers' compensation statute barred a claim for battery and intentional infliction of emotional distress based on an incident in which a male supervisor grabbed the breast of a female employee.
The Brown decision in turn rested on the First District's prior analysis in Schwartz v. Zippy Mart, Inc., 470 So.2d 720, 724 (Fla. 1st DCA 1985). Schwartz had held that sexual harassment falls outside the rule that, under workers' compensation, an employer remains liable in tort for his or her own intentional misconduct. The First District buttressed this rationale with the following quote from a treatise on the subject:
"When the person who intentionally injures the employee is not the employer in person nor a person who is realistically the alter ego of the corporation, but merely a foreman, supervisor or manager, both the legal and the moral reasons for permitting a common-law suit against the employer collapse, and a substantial majority of modern cases bar a damage suit against the employer."
Id. at 724 (quoting 2A Larson's Workmen's Compensation Law § 68.21, 13-28 (1982)). Under this rationale, the First District held that claims for assault and battery were barred as a result of an incident in which two female workers had been subjected *1102 to pinching, grabbing, and other gestures of a sexual nature. Id. at 724-25.
We acknowledge and reaffirm the strong policies regarding workers' compensation that form the foundation of the decisions discussed above. As the Court often has noted, our obligation is to honor the obvious legislative intent and policy behind an enactment, even where that intent requires an interpretation that exceeds the literal language of the statute. E.g., State v. Webb, 398 So.2d 820 (Fla. 1981).
In this context, we cannot find that acts constituting sexual harassment were ever meant to fall under workers' compensation. Moreover, we have an equal obligation to honor the intent and policy of other enactments and, accordingly, may not apply the exclusivity rule in a manner that effectively abrogates the policies of other law. In this instance, we find that the First District in Brown and Schwartz, and the Second District in the instant case, have ignored an equally important expression of public policy emanating from both federal and state enactments.
There can be no doubt at this point in time that both the state of Florida and the federal government have committed themselves strongly to outlawing and eliminating sexual discrimination in the workplace, including the related evil of sexual harassment. The statutes, case law, and administrative regulations uniformly and without exception condemn sexual harassment in the strongest possible terms. We find that the present case strongly implicates these sexual harassment policies and, accordingly, may not be decided by a blind adherence to the exclusivity rule of the workers' compensation statute alone. Our clear obligation is to construe both the workers' compensation statute and the enactments dealing with sexual harassment so that the policies of both are preserved to the greatest extent possible. Wakulla County v. Davis, 395 So.2d 540, 542 (Fla. 1981).
Thus, we must examine the scope of the public policies regarding sexual harassment. The primary source of these policies, both historically and under the supremacy clause of the United States Constitution, article VI, clause 2, is a portion of Title VII of the Civil Rights Act of 1964, which provides in pertinent part:
It shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex... .
42 U.S.C. § 2000e-2(a)(1) (1982). This federal provision was the model of Florida's Human Rights Act of 1977, sections 760.01-.10, Florida Statutes (1987), which uses virtually the same language in prohibiting the same practices. The Human Rights Act provides in pertinent part:
"It is an unlawful employment practice for an employer ... to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's ... sex... ."
§ 760.10(1)(a), Fla. Stat. (1987).
In interpreting Title VII, the federal courts have stated unequivocally that any sort of workplace sexual harassment is unlawful under Title VII and contrary to public policy. So strong is this policy that the United States Supreme Court has stated that,
[w]ithout question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor "discriminate[s]" on the basis of sex... . The phrase "terms, conditions, or privileges of employment" evinces a congressional intent "`to strike at the entire spectrum of disparate treatment of men and women'" in employment. Los Angeles Dept. of Water and Power v. Manhart, 435 U.S. 702, 707, n. 13, 98 S.Ct. 1370, 1375 n. 13, 55 L.Ed.2d 657 (1978), quoting Sprogis v. United Air Lines, Inc., 444 F.2d 1194, 1198 [(7th Cir.), cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971)].
Meritor Sav. Bank v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). Indeed, in Meritor the Supreme Court expressly rejected the notion that Title VII addresses only "economic discrimination." *1103 Id. The Meritor Court quoted with approval a statement by the Eleventh Circuit Court of Appeals that
"Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality. Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets."
Id. at 67, 106 S.Ct. at 2405 (quoting Henson v. City of Dundee, 682 F.2d 897, 902 (11th Cir.1982)).
Based on the principle that a "hostile work environment" falls within the prohibition of Title VII, the Court in Meritor explicitly endorsed the administrative regulations of the Equal Employment Opportunity Commission on the subject. Id. 477 U.S. at 66, 106 S.Ct. at 2405. These Guidelines on Discrimination Because of Sex, 29 C.F.R. sections 1604.01-.11 (1988), currently provide that sexual harassment includes
[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature ... when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.
29 C.F.R. § 1604.11(a).
Moreover, the Meritor Court also endorsed the position that an actual employer may be liable for sexual harassment done by any supervisory personnel, whether or not these personnel have authority to hire, fire, or promote, and whether or not the actual employer had an active role in the harassment. Meritor, 477 U.S. at 64, 106 S.Ct. at 2404. It drew this conclusion from the language of Title VII defining "employer" as the actual employer or his or her agent. 42 U.S.C. § 2000e(b) (Supp. III 1985). We note that the Florida Human Rights Act, again using Title VII as a model, also defines "employer" to include the actual employer and his or her agents. § 760.02(6), Fla. Stat. (1987). Clearly, the interpretation accorded Title VII is persuasive in interpreting the analogous language of the Florida Human Rights Act.
The strong public policy against workplace sexual harassment has been included in other provisions of Florida law. The Educational Equity Act, section 228.2001, Florida Statutes (1987), outlaws sexual discrimination in all state educational settings, again using language modeled after Title VII. Id. The regulations governing several universities have implemented this and related enactments by directly prohibiting sexual harassment. Fla. Admin. Code Rule 6C5-5.012 (Florida Atlantic University); Fla. Admin. Code Rule 6C8-4.021 (Florida International University); Fla. Admin. Code Rule 6C9-4.015 (University of North Florida).
Similar prohibitions appear throughout Florida's Administrative Code. Tracking the language used by the federal EEOC Guidelines on Discrimination Because of Sex, 29 C.F.R. sections 1604.01-.11 (1988), virtually the entire corps of state agencies now directly prohibits sexual harassment among employees.[6]
In light of this overwhelming public policy, we cannot say that the exclusivity rule *1104 of the workers' compensation statute should exist to shield an employer from all tort liability based on incidents of sexual harassment. The clear public policy emanating from federal and Florida law holds that an employer is charged with maintaining a workplace free from sexual harassment. Applying the exclusivity rule of workers' compensation to preclude any and all tort liability effectively would abrogate this policy, undermine the Florida Human Rights Act, and flout Title VII of the Civil Rights Act of 1964.
This, we cannot condone. Public policy now requires that employers be held accountable in tort for the sexually harassing environments they permit to exist, whether the tort claim is premised on a remedial statute or on the common law.
We find this conclusion harmonizes with the policies and scope of workers' compensation. As often has been noted, workers' compensation is directed essentially at compensating a worker for lost resources and earnings. This is a vastly different concern than is addressed by the sexual harassment laws. While workplace injuries rob a person of resources, sexual harassment robs the person of dignity and self esteem. Workers' compensation addresses purely economic injury; sexual harassment laws are concerned with a much more intangible injury to personal rights.[7] To the extent these injuries are separable, we believe that they both should be, and can be, enforced separately.
Certainly, whenever a claim is based on the Human Rights Act, Title VII of the Civil Rights Act of 1964, the Educational Equity Act, or any other statute prohibiting sexual discrimination or harassment, that claim cannot in logic or fairness be barred by the exclusivity rule. Doing so would improperly nullify a statute by judicial fiat and, in the case of the Civil Rights Act of 1964, would defy the Constitution.
Similarly, to the extent that the claim alleges assault, intentional infliction of emotional distress arising from sexual harassment or the specific type of battery involved in this case,[8] the exclusivity rule also will not bar them. This is so because these causes of action address the very essence of the policies against sexual harassment  an injury to intangible personal rights. Accord Hart v. National Mortgage & Land Co., 189 Cal. App.3d 1420, 235 Cal. Rptr. 68 (1987); Cox v. Brazo, *1105 165 Ga. App. 888, 303 S.E.2d 71, aff'd, 251 Ga. 491, 307 S.E.2d 474 (1983); O'Connell v. Chasdi, 400 Mass. 686, 511 N.E.2d 349 (1987); Hollrah v. Freidrich, 634 S.W.2d 221 (Mo. App. 1982); Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 340 S.E.2d 116 (N.C. App.), review denied, 317 N.C. 334, 346 S.E.2d 140 (1986); Palmer v. Bi-Mart Co., Inc., 92 Or. App. 470, 758 P.2d 888 (1988). But see Knox v. Combined Ins. Co., 542 A.2d 363 (Me. 1988); Baker v. Wendy's of Montana, Inc., 687 P.2d 885 (Wyo. 1984).
For the foregoing reasons, we quash the opinion of the district court below and remand for further proceedings consistent with the views herein. We express no opinion as to whether petitioners in this case have alleged sufficient facts to state a cause of action under the common law, an issue we do not reach. To the extent they conflict with this opinion, we disapprove Schwartz v. Zippy Mart, Inc., 470 So.2d 720, 724 (Fla. 1st DCA 1985), and Brown v. Winn-Dixie Montgomery, Inc., 469 So.2d 155, 159 (Fla. 1st DCA 1985). We answer the certified question in the negative.
It is so ordered.
McDONALD, SHAW and KOGAN, JJ., concur.
GRIMES, J., concurs with an opinion.
EHRLICH, C.J., concurs in result only with an opinion.
OVERTON, J., dissents.
GRIMES, Justice, concurring.
If the plaintiffs had suffered physical and emotional injuries as a result of sexual batteries perpetrated by the two employees whose conduct is complained of in this action, they would have a compensable workers' compensation claim and their lawsuit against the employer would be barred by virtue of the exclusiveness of the workers' compensation remedy. Here, because the plaintiffs incurred no physical injury, are they barred from recovery because the touching in a technical sense constituted a battery? Professor Larson suggests that the determination of the applicability of the workers' compensation law depends upon the nature of both the tort and the injury:
To test ... the conclusion that the element of damage must be considered along with the legal components of the tort, we may adduce the tort of assault. Here we are fortunate in having an actual decided case that makes the point. In Ritter v. Allied Chemical Corporation, [295 F. Supp. 1360 (D.S.C. 1968), aff'd, 407 F.2d 403 (5th Cir.1969)] plaintiff brought suit against her employer for an assault by one of her superiors. She stated that the only result of the assault was a scratch on her hand and some soreness, and did not claim any disability or other elements which might have provided compensation under the workmen's compensation laws of South Carolina. Because the injuries for which plaintiff was suing were not those which were covered by the compensation act, the court held that, on defendant's motion for judgment on the pleadings, the tort action against the employer was not barred.
This case is a reminder of the fact that, as every law student should know by his third week, the tort of assault does not require physical injury or even touching. Its minimal essence is putting the victim in fear of bodily harm. If bodily harm accompanies assault, as it usually does, the exclusiveness bar comes into play. If bodily harm does not accompany assault, the exclusiveness bar does not come into play. The conclusion must be that the test is not just the legal ingredients of assault, but also the results  specifically whether physical injury of the kind dealt with by the compensation act is produced.
To summarize: If the essence of the tort, in law, is non-physical, and if the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a makeweight, the suit should not be barred. But if the essence of the action is recovery for physical injury or death, the action should be barred even if it can be cast in the form of a normally non-physical tort.
*1106 2A A. Larson, The Law of Workmen's Compensation § 68.34(a) at 13-116 to -117 (1989) (footnotes omitted).
Measured by the foregoing criteria, I concur that the plaintiffs' suit is not barred by the exclusive remedy of workers' compensation. Whether the amended complaint states a cause of action against the employer remains a question for the district court of appeal to decide.
EHRLICH, Chief Justice, concurring in result only.
I do not believe that these acts which are referred to as "sexual harassment" in the workplace are within the letter, spirit, or purview of the Workers' Compensation Law, chapter 440, Florida Statutes (1987). The specific acts complained of do not result in an injury "by accident arising out of and in the course of employment," section 440.02(14), Florida Statutes, for which compensation benefits would be payable. Accordingly, I am of the opinion that the section 440.11 exclusiveness of liability is inapplicable, and that the employees may seek to impose liability upon the employers under the law applicable to tort cases. The public policy of the state has been accordingly set by the Florida Legislature.
I agree with Justice Barkett's scholarly analysis of the inapplicability of the Workers' Compensation Law to the facts at hand. While I too condemn sexual harassment and sexual discrimination in the workplace, I do not believe it necessary to undertake an extended analysis and survey of other statutes, administrative regulations, and case law, at the state and federal level, in order to conclude that plaintiffs are not precluded by the Workers' Compensation Law from pursuing a common law cause of action against their employers.
NOTES
[1] The district court did not pose a question itself. Accordingly, we phrase the question in a manner consistent with the record.
[2] We obviously are not concerned with the definition of "death."
[3] Webster's Third New International Dictionary 11 (1981), for instance, defines "accident" as "a usu. sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result."
[4] The First District recently has extended the principle of these cases to bring under workers' compensation even those injuries that result in only minor physical consequences, such as bruising that did not require medical treatment. Sheppard v. City of Gainesville Police Dep't, 490 So.2d 972, 973 (Fla. 1st DCA 1986). Because we decide this case on grounds of the strong public policy against workplace sexual harassment, we do not address the propriety of the rationale expressed in these cases.
[5] However, an injury intentionally inflicted by the employer himself or his or her alter egos does not fall within these principles, since workers' compensation was not established to excuse misconduct of this type. See Schwartz v. Zippy Mart, Inc., 470 So.2d 720, 724 (Fla. 1st DCA 1985).
[6] Agencies directly prohibiting sexual harassment include the Department of Business Regulation, Fla. Admin. Code Rule 7-2.0001 to 7-2.0013; the Department of Community Affairs, Fla. Admin. Code Rule 9-12.001 to 9-12.004; the Department of Administration, Fla. Admin. Code Rule 22-9.001 to 22.9.010; the Department of Agriculture and Consumer Services, Fla. Admin. Code Rule 5A-11.001 to 5A-11.011; the Department of Environmental Regulation, Fla. Admin. Code Rule 17-10.300 to 17-10.410; the Department of General Services, Fla. Admin. Code Rule 13J-5.001 to 13J-5.013; the Department of Transportation, Fla. Admin. Code Rule 14-84.001 to 14-84.016; the Department of Highway Safety and Motor Vehicles, Fla. Admin. Code Rule 15-6.001 to 15-6.009; the Department of Health and Rehabilitative Services, Fla. Admin. Code Rule 10-16.001 to 10-16.008; the Department of Law Enforcement, Fla. Admin. Code Rule 11J-1.001 to 11J-1.1011; the Department of Revenue, Fla. Admin. Code Rule 12-12.001 to 12-12.011; and the Department of Natural Resources, Fla. Admin. Code Rule 16A-8.001 to 16A-8.011.
[7] Indeed, this Court previously has adopted the "type of injury" test proposed by Professor Larson in his treatise, Workmen's Compensation Law, which will not necessarily recognize certain violations of personal rights as falling within the scope of worker's compensation. Strother v. Morrison Cafeteria, 383 So.2d 623, 628 (Fla. 1980). Under the "type of injury" approach, a two-part test determines what types of injuries are compensable only under worker's compensation. First, the injury must "arise out of" employment in the sense that it is caused by a risk inherent in the nature of the work in question. Id. at 624-26. It is immaterial whether the injury is caused by an intentional or unintentional act, so long as that act arose out of this type of risk. Id. This is true even where injury arises from the employee's own conscious act. Gray v. Employers Mutual Liability Insurance Co., 64 So.2d 650 (Fla. 1952). Second, the injury must occur "in the course of" employment. This prong of the test, also adopted by this Court in Strother, requires that the injury must have substantially originated from the "time and space" of work, resulting in an injury directly linked to the work environment or work-related activities. It is immaterial that the injury actually occurred at a later time or place, provided the events leading to the injury were set in motion in the work environment or during work-related activities. Strother, 383 So.2d at 625-26. We conclude that, as a matter of public policy, sexual harassment should not and cannot be recognized as a "risk" inherent in any work environment. Accordingly, it does not meet the first prong of the test.
[8] Because the battery involved in cases of this type differs significantly from that addressed in our prior case law, we distinguish this case factually from our opinions in W.T. Edwards Hospital v. Rakestraw, 114 So.2d 802, 803 (Fla. 1959); Tampa Maid Seafood Products v. Porter, 415 So.2d 883, 885 (Fla. 1982); Prahl Brothers, Inc. v. Phillips, 429 So.2d 386, 387 (Fla. 1st DCA 1983); and Strother, 383 So.2d at 623. That is, we do not perceive the battery alleged in this instance as involving wage loss or workplace injury, but an unlawful intrusion upon personal rights protected by remedial legislation such as the Florida Human Rights Act.