**Andrea R. SPARKS, Plaintiff,**

v.

**JAY'S A.C. & REFRIGERATION, INC., a Florida Corporation, and Vincent Tipaldo, Defendants.**

**No. 96–1937–CIV–T–24(E).**

United States District Court, M.D. Florida, Tampa Division.

July 15, 1997.

Bernard H. Dempsey, Jr., Dempsey & Sasso, Orlando, FL, for Plaintiff.

Kelli Hanley Crabb, Battaglia, Ross, Dicus & Wein, St. Petersburg, FL, for Defendants.

## *ORDER*

BUCKLEW, District Judge.

This cause is before the Court on Defendants' Motion to Dismiss (Doc. No.6, filed November 25, 1996). Plaintiff filed a response in opposition on December 20, 1996 (Doc. No. 11).

Plaintiff commenced this employment discrimination action on September 27, 1996. The complaint contains eleven counts alleging: Title VII *Quid Pro Quo* Sexual Harassment (Count I); Title VII Hostile Work Environment Sexual Harassment (Count II); Title VII Retaliation (Count III); Title VII Constructive Discharge (Count IV); Florida Statute *Quid Pro Quo* Sexual Harassment (Count V); Florida Statute Hostile Work Environment Sexual Harassment (Count VI); Florida Statute Retaliation (Count VII); Assault (Count VII); Battery (Count IX); Intentional Infliction of Emotional Distress (Count X); and Invasion of Privacy (Count XI).

Defendants' motion presents several arguments. First, Defendants seek dismissal of Counts I through VI because the complaint fails to allege a jurisdictional basis for the action, i.e., the complaint does not allege the requisite number of employees. Second, Defendants argue Counts VIII, IX and X fail to state a claim against Defendant Jay's in that the complaint fails to allege sufficient facts to support such respondeat superior liability. Third, Defendants contend the facts alleged do not support a claim of intentional infliction of emotional distress (Count X). Fourth, Defendants argue all counts fail to state a claim upon which relief can be granted for pre-judgment interest. Fifth, Defendants maintain that Plaintiff's claim for punitive damages should be dismissed as Plaintiff has failed to plead sufficient facts to support such a claim. Finally, Defendant states that Count XI should be dismissed because there is no private right of action based upon a violation of privacy rights guaranteed under the Florida Constitution.

Plaintiff's response contends that the motion should be denied. Plaintiff stresses that she has properly alleged the causes of action in Counts I through VI, VIII, IX, X and XI and for punitive damages and pre-judgment interest.

## Standard of Review

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed for failure to state a cause of action "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir.1991). The Federal Rules of Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley,* 355 U.S. at 47, 78 S.Ct. at 103. All that is required is "a short and plain statement of the claim." Fed.R.Civ.P.

8(a)(2). The Federal Rules have adopted this "simplified pleading" approach because of "the liberal opportunity for discovery and other pretrial procedures ... to disclose more precisely the basis of both claim and defense...." *Id.* at 47–48, 78 S.Ct. at 103. The purpose of notice pleading is to reach a decision on the merits and to avoid turning pleading into "a game of skill in which one misstep by counsel may be decisive to the outcome." *Id.*

## Discussion

### I. Jurisdictional Requisites: The required number of employees.

The Court rejects Defendants' argument that Plaintiff has not alleged the jurisdictional requisites for an action under Title VII or Florida Statutes. Plaintiff has properly alleged that Defendants were her employer and that Defendants fall within the scope of Title VII. *See* Doc. No. 1 at ¶ 5; *Williams v. Greendolf, Inc.,* 735 F.Supp. 137, 140 (S.D.N.Y.1990). Accordingly, this portion of Defendants' motion is denied.

### II. Respondeat Superior

Counts VIII, IX and X allege the intentional torts of assault, battery and intentional infliction of emotional distress. Defendant Jay's contends to the extent these Counts apply to it, they should be dismissed because the complaint does not allege facts sufficient to support such respondeat superior liability. Specifically, Defendant Jay's argues that since these intentional torts were committed by Defendant Vincent Tipaldo, Defendant Jay's employee, Defendant Jay's will only be liable "where the conduct in question was of the type that was within the scope of employment, was of the type that the employee was hired to perform, occurred substantially within the time and space limit of the employment and was activated at least in part by a purpose to serve the employer." Doc. No. 6 at 5. Defendant Jay's stresses that even viewing the complaint in a light most favorable to the Plaintiff, the complaint still fails to allege respondeat superior liability

because the acts allegedly committed by Defendant Tipaldo in no way served any purpose or interest of the employer.

■■■ Citing to *Dibernardo v. Waste Management, Inc. of Fla.*, 838 F.Supp. 567 (M.D.Fla.1993), and *Urquiola v. Linen Supermarket, Inc.*, No. 94–14–CIV–ORL–19, 1995 WL 266582 (M.D.Fla.1995), Plaintiff contends that an employer is liable for Florida common law torts committed by an employee who engaged in sexual harassment to the same extent an employer is liable for employee conduct under Title VII. Plaintiff stresses that such a conclusion is mandated by the Florida Supreme Court's decision in *Byrd v. Richardson–Greenshields Sec.*, 552 So.2d 1099 (Fla.1989). The *Byrd* opinion, Plaintiff argues, held that employers are accountable under common law tort theories when their employees engage in sexual harassment to the same extent that an employer would be liable under Title VII for the action of its employees. Accordingly, the prima facie elements of respondeat superior liability for intentional torts such as assault and battery are modified when such torts arise out of sexual harassment. The plaintiff does not have to establish respondeat superior liability by proving that the conduct of the employee was "in the scope of employment" and "activated at least in part to serve the master." *Liberty Mut. Ins. Co. v. Electronic Sys., Inc.*, 813 F.Supp. 802, 806 (S.D.Fla. 1993). Rather, plaintiff must merely allege Title VII liability, for example, via a hostile work environment sexual harassment claim or a *quid pro quo* sexual harassment claim. In sum, Plaintiff's argument substitutes the "lesser" respondeat superior elements of Ti-

tle VII for the "stricter" respondeat superior elements under Florida law.[1]

The Court notes that there is some confusion amongst the District Courts within the State of Florida as to employers' respondeat superior liability for intentional torts committed within the context of sexual harassment. Having fallen victim to this confusion,[2] this Court notes that it is in part a result of the arguments or lack of arguments made before the respective courts. Nonetheless, the Court takes this opportunity to explore the issue.

There are four District Court cases from the State of Florida that support Plaintiff's argument. In chronological order, the first case is *Dibernardo v. Waste Management, Inc. of Fla.*, 838 F.Supp. 567 (M.D.Fla.1993). In *Dibernardo*, the plaintiff alleged Title VII claims of hostile work environment and *quid pro quo* as well as supplemental state law claims of battery, invasion of privacy, intentional infliction of emotional distress and false imprisonment. The defendant employer moved to dismiss the state law claims, arguing that only the individual employees could be responsible for these torts, i.e., the actions were outside the scope of employment. *Id.* at 569. In denying the motion, the court evaluated the issue of respondeat superior liability not under state law agency issues, but rather under the Title VII respondeat superior elements. The court found that since plaintiff had alleged the necessary elements of Title VII hostile work environment and *quid pro quo*, the plaintiff had established respondeat superior liability. *Id.* at 570–71. In reaching this conclusion, however, the court never stated that the ele-

---

1. Under Florida law, for an employer to be liable under the theory of respondeat superior for the intentional torts of an employee, the alleged wrongs must be committed within the real or apparent scope of the employer's business. Conduct is within the scope of the business if the conduct is the kind the employee is hired to perform, if it occurs within the time and space limits of the job, and if it is activated at least in part to serve the master. *Blount v. Sterling Healthcare Group, Inc.*, 934 F.Supp. 1365, 1371 (S.D.Fla.1996).

Under Title VII, the plaintiff establishes respondeat superior liability by demonstrating that

the employer knew or should have known of the harassment and failed to take prompt action to remedy the violation. Additionally, respondeat superior liability is directly established if the harassing employee is an "agent" of the employer. *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 904 (11th Cir.1988).

2. *See Steele v. Tenet Healthcare Corp.*, Case No. 95–1365–CIV–T–24(A); *Tomes v. Blue Cross & Blue Shield*, Case No. 94–719–CIV–T–24(E).

ments of respondeat superior liability for intentional torts arising out of sexual harassment claims had been modified. Rather, such conclusion seems to be implied via the citation to the *Byrd* opinion.[3]

The next case supporting Plaintiff's argument states explicitly the conclusion implied in *Dibernardo*. In *Urquiola v. Linen Supermarket, Inc.*, 94–14–CIV–ORL–19, 1995 WL 266582, (M.D.Fla.1995), the defendant employer moved to dismiss plaintiff's supplemental state law claim of battery, arguing that as the employer it could not be liable because the battery committed by the employee was not motivated by the purpose of serving the employer. In denying the motion, the court cited to *Byrd* and *Dibernardo* to support its conclusion that in cases involving sexual harassment, "the standards for imputing employer liability have been modified to reflect the strong public policy of preventing sexual harassment in the workplace. Employers who allow a sexually harassing environment to exist in the workplace may be liable for any torts arising out of that atmosphere." *Id.* at * 3. The court then observed that plaintiff had alleged the elements of Title VII hostile work environment as enumerated in *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 903 (11th Cir. 1988).[4] Specifically, the complaint alleged that the harassing employee was an "agent" of the defendant employer such that the plaintiff did not have to prove that the defendant employer knew or should have known of the harassment. The employer's liability was direct. *Urquiola*, 1995 WL 266582, at *4.

Unlike the first two cases, the third case involved a motion for summary judgment. In *Liberti v. Walt Disney World Co.*, 912 F.Supp. 1494 (M.D.Fla.1995), the plaintiffs brought a Title VII sexual harassment action against Disney. The complaint also contained supplemental state law claims, including intentional infliction of emotional distress. Defendant moved for summary judgment on this claim, arguing, in part, that it escaped liability under the doctrine of respondeat superior. The underlying action concerned defendant's employee videotaping, in "peeping Tom" format, defendant's other employees in various states of undress. The court began by noting that, in general, sexual assaults by employees are outside the scope of an employee's employment and are insufficient to impose vicarious liability on the employer. *Id.* at 1507. It then stated, however, that the case did not deal with sexual assault. Rather, the case was a Title VII sexual harassment case involving the supplemental state law claim of intentional infliction of emotional distress. Citing to *Urquiola*, the court held that defendant employer was liable for the actions of its employee because the Title VII elements of respondeat superior liability were present. The plaintiffs were members of a protected class, and the defendant knew or should have known of the harassment. *Id.* The Court then denied the defendant's motion for summary judgment, stating that a jury could find that the defendant's actions were "outrageous." *Id.*

The last case, *Robertson v. Edison Bros. Stores, Inc.*, Case No. 94–1315–CIV–ORL–19, 1995 WL 356052 (M.D.Fla. Apr.11, 1995), contains language virtually identical to that in *Urquiola*. The only significant difference is that instead of premising the Title VII respondeat superior liability upon an allegation that the harassing employee is an "agent" of the employer (as was the case in *Urquiola*), the liability is premised upon the

---

**3.** Immediately prior to discussing the Title VII elements of respondeat superior liability, the court quoted *Byrd*. " 'Public policy now requires that employers be held accountable in tort for the sexually harassing environments they permit to exist, whether the tort claim is premised on a remedial statute or the common law.' " *Dibernardo*, 838 F.Supp. at 570 (quoting *Byrd* 552 So.2d at 1104).

**4.** The elements are: (1) plaintiff belongs to a protected class; (2) plaintiff was subjected to a unwanted sexual harassment; (3) the harassment was based on sex; (4) the harassment affected the terms, conditions, or privileges of employment; and (5) the employer knew or should have known of the harassment but failed to take prompt remedial action.

complaint's allegations that the employer knew or should have known of the harassment. *Id.* at \*2. The Court, however, did reiterate that in light of the reasoning in *Byrd,* the standard for imputing employer liability for supplemental state law claims in sexual harassment cases had been modified. As long as the plaintiff establishes Title VII hostile work environment respondeat superior liability, the employer is liable for any torts arising out of that atmosphere. *Id.*

There are three cases from District Courts within Florida, all more recent than those just discussed, which do not support the Plaintiff's argument. In *Vernon v. Medical Management Assoc. of Margate, Inc.* 912 F.Supp. 1549 (S.D.Fla.1996), the plaintiff commenced an employment discrimination action against her employer and the harassing employee. The complaint also contained the supplemental state law claims of battery, invasion of privacy, intentional infliction of emotional distress and false imprisonment. *Id.* at 1553. Defendant employer moved to dismiss the battery claim, arguing that under the doctrine of respondeat superior it could not be liable for the battery of its employee. In response, plaintiff argued that "Margate is strictly liable because the actions of Ebersold constitute a quid pro quo type violation of Title VII." *Id.* at 1556. Addressing plaintiff's response, the court commented, "Vernon offers no support whatsoever for this argument, which *misapprehends the difference between Title VII and pendent state law claims arising out of acts constituting sexual harassment.*" *Id.* (emphasis added). The court then observed that since the complaint alleged that the employee was acting within the course and scope of his employment when he committed the battery, the complaint properly alleged a cause of action, and the motion to dismiss must be denied. At no point in the opinion did the court evaluate the issue of the employer's respondeat superior liability for the claim of battery via a Title VII analysis.

In *Blount v. Sterling Healthcare Group, Inc.,* 934 F.Supp. 1365 (M.D.Fla.1996), the court addressed a supplemental state law claim of battery arising out of a sexual harassment claim without reference to Title VII respondeat superior liability. The court held that since plaintiff had alleged that the employee committing the battery did so in the "scope" of his employment, the complaint properly alleged a claim of respondeat superior liability against the employer. *Id.* at 1373.

Finally, in *Ayers v. Wal–Mart Stores, Inc.,* 941 F.Supp. 1163 (M.D.Fla.1996), the court not only analyzed a motion to dismiss supplemental state law claims arising from allegations of sexual harassment without reference to Title VII respondeat superior, but also specifically commented that such a reference would be improper. In *Ayers,* the plaintiff alleged Title VII sexual harassment as well as respondeat superior liability for the intentional torts of battery, assault, intentional infliction of emotional distress and false imprisonment. The defendant moved for partial summary judgment on the intentional torts, arguing that as the employer it could not be liable because the employee was not motivated by a desire to further the employer's interest. After stating the elements of respondeat superior liability under Florida law,[5] the court highlighted plaintiff's argument. Plaintiff argued that a factual dispute existed as to whether the employee was acting within the scope of his employment. The court rejected plaintiff's argument, noting that it impermissibly applied a Title VII analysis.

> Ayers mistakenly argues the issue of corporate liability under the Title VII doctrines of quid pro quo and hostile environment sexual harassment, by citing *Faragher v. City of Boca Raton,* 76 F.3d 1155 (11th Cir.1996). Count IV, on which Wal–Mart moves for summary judgment, concerns the intentional torts of Uzochuk-

---

5. An employee's conduct is within the scope of his employment if (1) the conduct was the kind the employee was employed to perform; (2) the conduct occurred within the time and space lim-

its of the employee's employment; and (3) the conduct was activated at least in part by a desire to serve the master. *Ayers,* 941 F.Supp. at 1168.

wu ("this count arises under the common law of the State of Florida") and should not be evaluated under the Title VII doctrines of corporate liability, as discussed in *Faragher* .... Rather, Ayers concentrates on the notice of Uzochukwu's actions given to Wal–Mart and Wal–Mart's response. *While that line of reasoning is very relevant to a corporation's liability for sexual harassment under Title VII, notice to Wal–Mart does not affect the analysis of respondeat superior liability for the state common law tort claims.*

*Id.* at 1169 (emphasis added).

All of the above opinions which apply a Title VII respondeat superior analysis to the supplemental state claims rely, either directly or indirectly, upon the *Byrd* opinion to support their analysis. Under standard jurisprudence, such a reliance is appropriate. Respondeat superior claims for battery, intentional infliction of emotional distress, assault, invasion of privacy, etc., are supplemental state law claims. Federal courts evaluating such claims defer to state court decisions. *Johnson v. Fleet Finance, Inc.,* 4 F.3d 946 (11th Cir.1993). Accordingly, the issue becomes whether the Florida Supreme Court's opinion in *Byrd* modifies the prima facie elements of respondeat superior for intentional torts arising out of a sexual harassment claim such that the plaintiff need only establish the Title VII prima facie elements of respondeat superior. This Court finds that *Byrd* does not modify the prima facie elements.

In *Byrd,* the court addressed the specific and narrow issue of "whether the workers' compensation statute provides the exclusive remedy for a claim based on sexual harassment in the workplace." *Byrd,* 552 So.2d at 1100. In analyzing the issue, the court discussed the policies behind both the Workers'

Compensation statute and Title VII. The court stressed that it was obligated to construe the two statutes "so that the policies of both are preserved to the greatest extent possible." *Byrd,* 552 So.2d at 1102. The court concluded that application of the exclusivity rule would undermine Title VII and the policies against sexual harassment.

> The clear public policy emanating from federal and Florida law holds that an employer is charged with maintaining a workplace free from sexual harassment. Applying the exclusivity rule of workers' compensation to preclude any and all tort liability effectively would abrogate this policy, undermine the Florida Human Rights Act, and flout Title VII of the Civil Rights Act of 1964.

*Id.* at 1103. The court then made the statement relied upon by the four cases supporting Plaintiff's position. "Public policy now requires that employers be held accountable in tort for the sexually harassing environments they permit to exist, whether the tort claim is premised on a remedial statute or on the common law." *Id.* Prior to concluding, the court stated that claims alleging assault, intentional infliction of emotional distress and battery arising from sexual harassment will not be barred by the exclusivity rule. *Id.* at 1104.

It must be stressed, however, at no point in the opinion did the court state that the prima facie elements of respondeat superior for claims arising out of sexual harassment had been modified. Moreover, at no point did the court mention the elements of Title VII respondeat superior liability,[6] much less state that these elements had replaced or modified the standard prima facie elements of respondeat superior liability. Thus, any conclusion that employers are accountable under any common law tort theories when their employees engage in sexual harassment

---

**6.** The *Byrd* court never mentioned *Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 904 (11th Cir.1988), or the prima facie hostile work environment sexual harassment elements of: (1) the plaintiff was a member of a protected class; (2) the plaintiff was subjected to unwanted sexual harassment; (3) because of the plaintiff's sex; (4) the harassment affected the terms, conditions or privileges of employment; and (5) the employer knew, or should have known, of the harassment and failed to take prompt action to remedy the violation.

to the same extent that an employer would be liable under Title VII for the action of its employees is an expansive reading of Byrd that this Court cannot endorse. The Florida Supreme Court was not and did not address the prima facie elements of respondeat superior for torts arising out of sexual harassment claims in *Byrd.* The *Byrd* court only addressed the specific and narrow issue of whether the Workers' Compensation exclusivity rule barred claims based on sexual harassment.

This conclusion is even supported by the language in *Robertson* and *Urquiola,* two opinions supporting Plaintiff's argument. In *Robertson,* the plaintiff sued the defendant for negligence premised on common law sexual harassment and for negligent retention. Defendant moved to dismiss the claim, contending that Florida law does not recognize a common law cause of action for sexual harassment. The plaintiff responded that such a claim was established in *Byrd.* In rejecting this argument, the court stated:

> Although the Court's opinion contains expansive language which might suggest that it was recognizing a new tort, when read carefully and considered in context of the specific facts of *Byrd,* this Court does not believe that the Florida Supreme Court was establishing a new tort of sexual harassment. Rather, it appears that the Court was adopting the more narrow position that companies which allow employees to commit torts such as battery, intentional infliction of emotional distress, or assault as part of a sexually harassing environment can no longer hide behind the workers' compensation exclusion rule to escape liability. Therefore, the Court finds that Plaintiff's negligence claims cannot stand.

*Robertson,* 1995 WL 356052, at *2. In *Urquiola,* the plaintiff presented a similar claim of common law sexual harassment pursuant to *Byrd.* The court again rejected the claim, using virtually identical language.

> Although the Court's opinion contains expansive language which might suggest

that it was recognizing a new tort, when read carefully and considered in context of the specific facts of *Byrd,* this Court does not believe that the Florida Supreme Court was establishing a new tort of sexual harassment. Rather, it appears that the Court was adopting the more narrow position that companies which allow employees to commit torts such as battery, intentional infliction of emotional distress, or assault as part of a sexually harassing environment can no longer hide behind the workers' compensation exclusion rule to escape liability. Therefore, the Court finds that Plaintiff has no cause of action for common law sexual harassment.

*Urquiola,* 1995 WL 266582, at * 3.

Accordingly, this Court concludes that the *Byrd* opinion does not modify the prima facie elements of respondeat superior liability for supplemental state law claims arising out of sexual harassment allegations. Florida law concerning the elements of "scope of employment" still applies. Plaintiff must allege that Defendant Tipaldo's actions were committed in the scope of his employment at Defendant Jay's. A review of the complaint in a light most favorable to the Plaintiff reveals that it does allege a cause of action. Specifically, paragraphs 104, 111 and 122 allege that the acts were committed in the scope of employment. In light of the Rule 12(b)(6) standard, the motion must be denied. Plaintiff has alleged the necessary elements.[7]

### III. Intentional Infliction of Emotional Distress

Under Florida law, to establish a claim for intentional infliction of emotional distress, the plaintiff must show "outrageousness."

> "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Gen-

---

7. The Court questions, however, whether Plain-    tiff will in fact be able to prove her claim.

erally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' "

*Metropolitan Life Ins. Co. v. McCarson,* 467 So.2d 277, 278–79 (quoting RESTATEMENT (SECOND) OF TORTS § 46 (1965)). The question of what constitutes outrageous conduct is judged by an objective standard. *Id.* Additionally, it is ordinarily an issue of law to be resolved by the court.

Within the context of employment discrimination, Florida courts have recognized claims for intentional infliction of emotional distress where the complaint alleges repeated and relentless physical and verbal abuse. *Vernon,* 912 F.Supp. at 1559. Having reviewed the complaint, the Court finds that it does not allege facts sufficient to support such a claim. Accordingly, the motion as to Count X is granted. Count X is dismissed.

## IV. Prejudgment Interest

■ The Court denies Defendant's motion as to Counts I through VII. These Counts are premised upon Title VII and the Florida Civil Rights Act. These statutes authorize a claim for prejudgment interest. *See Loeffler v. Frank,* 486 U.S. 549, 557–58, 108 S.Ct. 1965, 1970–71, 100 L.Ed.2d 549 (1988); *Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 786 n. 15 (1st Cir.1990); *Kelly v. K.D. Constr. of Fla., Inc.,* 866 F.Supp. 1406, 1411 (S.D.Fla.1994); *Florida Dep't of Community Affairs v. Bryant,* 586 So.2d 1205, 1209 (Fla. 1st DCA 1991).

■■ The Court grants the motion as to Counts VIII through XI. These Counts sound in personal injury. Florida law does not recognize claims for prejudgment interest on awards for personal injury. *Argonaut Ins. Co. v. May Plumbing Co.,* 474 So.2d 212, 215 n. 1 (Fla.1985); *Parker v. Brinson Constr. Co.,* 78 So.2d 873, 874–75 (Fla. Spec.Div.A.1955).

## V. Punitive Damages

Counts I through IV arise under Title VII. Pursuant to 42 U.S.C. § 1981a(b)(1), a Title VII plaintiff may obtain punitive damages where the "complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Reviewing the complaint under the appropriate standard, the Court finds that the complaint has sufficiently alleged a claim for punitive damages under Title VII. Accordingly, the Court denies the motion as to Counts I through IV.

Counts V through VII arise under the Florida Civil Rights Act. Florida Statute § 760.11(5) specifically provides for punitive damages. Moreover, the section specifically states that the pleading requirements of Florida Statute §§ 768.72 and 768.73 do not apply to claims arising under the Florida Civil Rights Act. Accordingly, the Court denies the motion as to Counts V through VII.

Counts VIII through XI aver supplemental state law claims and, therefore, are subject to the provisions of Florida Statute § 768.72. Pursuant to section 768.72, "no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." A review of the file reveals that Plaintiff has not complied with this section. Accordingly, the motion is granted as to Counts VIII through XI. The Plaintiff's claim for punitive damages arising from these Counts is dismissed.

## VI. Invasion of Privacy

■ Count XI alleges invasion of privacy. Paragraph 126 specifically states that the claim is premised not upon the common law, but rather upon Article I, Section 23 of the Florida Constitution. Since Article I, Section 23 only applies to governmental intrusion, the Defendant's motion is granted. *Resha v. Tucker,* 670 So.2d 56, 58 (Fla.1996). However, the Court grants Plaintiff leave to file an amended complaint alleging invasion of privacy under the common law. *See Vernon,* 912 F.Supp. at 1561. Plaintiff shall

have twenty days from the date of this Order to file an amended complaint. The leave to amend only concerns the allegation of invasion of privacy. Plaintiff shall, however, amend the rest of the complaint such that it complies with the rulings announced in this Order.

### Conclusion

Accordingly, it is **ADJUDGED AND ORDERED** that Defendants' Motion to Dismiss (Doc. No. 6, filed November 25, 1997) is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** as to Count III. Count III fails to state facts sufficient to support the claim of intentional infliction of emotional distress and is hereby dismissed. The motion is **GRANTED** as to Plaintiff's claim for prejudgment interest arising from Counts VIII through XI. Plaintiff's claim for prejudgment interest arising from Counts VIII through XI is dismissed. The motion is **GRANTED** as to Plaintiff's claim for punitive damages arising from Counts VIII through XI. Finally, the motion is **GRANTED** as to Count XI. Count XI is dismissed for failure to state a claim. The motion is **DENIED** in all other respects. Plaintiff shall have twenty days from the date of this Order to file an amended complaint. The leave to amend only concerns the allegation of invasion of privacy. Plaintiff shall, however, amend the rest of the complaint such that it complies with the rulings announced in this Order.