**Judy A. RESLEY, Plaintiff,**

v.

**The RITZ–CARLTON HOTEL COMPANY, etc., Defendant.**

**No. 96–559–Civ–J–20C.**

United States District Court, M.D. Florida, Jacksonville Division.

Dec. 9, 1997.

Archibald J. Thomas, III, Archibald J. Thomas III, P.A., Jacksonville, FL, for Plaintiff.

Mark G. Alexander, Margaret Widman Dees, Holland & Knight LLP, Jacksonville, FL, for Defendant.

## ORDER

SCHLESINGER, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 18, filed September 12, 1997). Defendant has filed a Memorandum of Law ("Defendant's Memo," Doc. No. 19, filed September 12, 1997) in support of its Motion for Summary Judgment, and Plaintiff has filed a Response ("Plaintiff's Response," Doc. No. 38, filed September 26, 1997).

## I. Background

Plaintiff Judy A. Resley ("Plaintiff" or "Resley") was first employed by Defendant The Ritz–Carlton Hotel Company ("Defendant" or "Ritz–Carlton") as a Housekeeping Room Attendant on September 3, 1991. Plaintiff alleges that in early 1992, a co-worker named Greg Davis ("Davis") began to sexually harass her. Plaintiff further alleges that despite reporting the harassment to Defendant's management personnel, Davis continued to harass Plaintiff until she left her position with Defendant in December 1993.

Plaintiff and Defendant agree that Plaintiff departed in December 1993 on a medical leave of absence. While Defendant maintains that it never terminated Plaintiff, and that Plaintiff never actually resigned her position, Plaintiff alleges that one of Defendant's supervisors, Calvin Bostic ("Bostic") terminated her in February 1994, following an incident that occurred while Plaintiff visited Defendant's premises during her leave of absence. Plaintiff also argues in her Response to Defendant's Motion for Summary Judgment that Davis's harassment and management's inadequate response created a hostile work environment sufficient to constitute constructive discharge.

After exhausting her administrative remedies through the federal Equal Employment Opportunity Commission and Florida Commission on Human Rights, Plaintiff filed the instant suit for damages and injunctive relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Florida Civil Rights Act, F.S. § 760.01 *et seq.*, and Florida's private sector "whistleblower" statute, F.S. § 448.102. Plaintiff claims that she was subjected to "hostile work environment sexual harassment," that Defendant accorded her disparate treatment and discharged her based upon her gender, and that Defendant discharged her in retaliation for her complaints of discrimination.

Plaintiff also claims that Davis's unwelcome sexual advances and physical contact constitute "assault," "battery," and "invasion of privacy" under Florida state law, that Defendant is vicariously liable for Davis's conduct in this regard, and that Defendant is directly liable in its own right for its "negligent retention" of Davis.[1] Finally, Plaintiff claims that Bostic's actions during the February 1994 incident support a cause of action for "false imprisonment" under Florida state law.

## II. Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A defendant may move for summary judgment as to the entire case "or any part thereof." Fed.R.Civ.P. 56(b). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991).

A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence supporting the nonmoving party's case. *Celotex,* 477 U.S. at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits. *Id.* When a moving party has discharged this burden, the nonmoving party must then "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotations omitted).

In determining whether the moving party has met its burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law,

---

1. Although Plaintiff denominated Count VI of her Complaint as a claim for "[n]egligent hiring or retention," Plaintiff subsequently averred (and the Court agreed) that the allegations stated a claim for "negligent retention" only. *See* Order entered April 25, 1997 (Doc. No. 9) (denying Defendant's Motion to Dismiss).

the Court must draw inferences from the evidence in the light most favorable to the nonmoving party. *Key West Harbour Development Corp. v. City of Key West*, 987 F.2d 723, 726 (11th Cir.1993). The nonmoving party need not be given the benefit of every inference, but only of every "reasonable" inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988) (citations and quotations omitted).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir.1988). It must be emphasized that "the mere existence of *some* alleged factual dispute ... will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## III. Analysis

### Count I (Title VII—Sexual Harassment) and Count VIII (Florida Civil Rights Act—Sexual Harassment)

■ Under Title VII, an employer may be directly liable for hostile work environment sexual harassment if the employer "knew, or upon reasonably diligent inquiry should have known, of the harassment and failed to take immediate and appropriate corrective action." *Faragher v. City of Boca Raton*, 111 F.3d 1530, 1535 (11th Cir.1997).[2] Defendant contends that it is insulated from liability for Davis's sexual harassment of Plaintiff because it took immediate and appropriate measures to stop the harassment. Irrespective of the appropriateness or efficacy of Defendant's corrective measures, Plaintiff has adduced evidence from which a reasonable finder of fact could conclude that the corrective measures were not prompt.

■ Defendant's argument that its actions were prompt is predicated on Defendant's evidence that Plaintiff did not have actual or constructive knowledge of Davis's harassment of Plaintiff until Plaintiff first complained to Ritz–Carlton management in July or August 1993. Defendant maintains that it took action immediately thereafter. Plaintiff, however, has testified that she first complained to her supervisor at some point in *1992:* "It would have been '92—'92, I'm sure." (Resley Deposition, at 51.) This raises a genuine issue of material fact as to Defendant's timeliness in taking remedial action, and hence, as to Defendant's direct liability for hostile work environment sexual harassment under Title VII.

■ Since the Florida Civil Rights Act essentially mirrors Title VII, courts construing the Florida Civil Rights Act will look to federal case law construing Title VII. *E.g., Fredette v. BVP Management Associates*, 905 F.Supp. 1034 (M.D.Fla.1995); *Byrd v.*

---

**2.** Plaintiff does not appear to argue that Defendant could be indirectly liable under Title VII for Davis's conduct, and the Court does not find sufficient evidence to justify such liability. *See* generally *Faragher*, 111 F.3d at 1535–37 (discussing indirect liability for sexual harassment under Title VII).

*Richardson–Greenshields Securities, Inc.,* 552 So.2d 1099 (Fla.1989). Accordingly, for the same reasons Plaintiff may proceed on her sexual harassment claim under Title VII, Plaintiff may also proceed on her sexual harassment claim under the Florida Civil Rights Act.

## Count II (Title VII—Retaliation)

■ Plaintiff alleges that Defendant discharged her in retaliation for her complaints about sexual harassment. (Complaint ¶ 16.) "In order to establish a prima facie case of retaliation prohibited by Title VII [42 U.S.C. § 2000e–3(a)], the plaintiff must show (1) that there was a statutorily protected participation; (2) that an adverse employment action occurred; and (3) that there was a causal link between the participation and the adverse employment action." *Fleming v. Boeing Co.,* 120 F.3d 242, 248 (11th Cir.1997) (quotations omitted).

There is no dispute that Plaintiff complained to Defendant at some point during the course of her employment about being sexually harassed, and that her complaints constitute statutorily protected activity within the meaning of Title VII. As for the "adverse employment action" prong of the unlawful retaliation analysis, Plaintiff contends that one of Defendant's supervisors, Calvin Bostic, terminated her on February 12, 1994, following an incident that occurred while Plaintiff visited Defendant's premises during her leave of absence. The parties agree that Plaintiff visited Defendant's employee cafeteria during her leave of absence and consumed a bowl of soup for which she did not pay, although Defendant contends that this actually occurred on January 31, 1994, not February 12, 1994.

The parties also agree that on that same day, whichever day it may have been, Bostic spoke to Plaintiff about this breach of Defendant's policy. Plaintiff has testified that Bostic berated her, specifically telling her that he was terminating her employment, and that he had the authority to do so. (Resley Deposition, at 124). Defendant concedes for the purposes of the instant Motion for Summary Judgment that Plaintiff's allegation that Bostic terminated her must be taken as true.

■ Nevertheless, Defendant argues that Plaintiff has not, and cannot, demonstrate that there is any causal connection between Plaintiff's complaints about Davis and her termination. (Defendant's Memo, at 8–9.) To make a prima facie showing of causal connection, a plaintiff need only demonstrate that the adverse action and the protected activity are not "wholly unrelated." *Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir.1985). Defendant contends that the two must be wholly unrelated in the instant case because "there are no facts to show that Calvin Bostic . . . knew anything about Resley's complaints of sexual harassment." (Defendant's Memo, at 9.)

■■ Moreover, Defendant argues that it had a legitimate, non-discriminatory reason for terminating Plaintiff. Such a reason may be used to successfully rebut a charge of unlawful retaliation. *Simmons,* 757 F.2d at 1189. Hence, Defendant suggests that if Bostic terminated Plaintiff, he did so because Plaintiff violated Ritz–Carlton's policies by not reporting in to security, and by eating in the employee cafeteria, during her off-duty visit. (Defendant's Memo, at 9.)

■ Plaintiff, however, points out sufficient evidence from which a reasonable finder of fact could reject Defendant's proffered non-discriminatory reason, and infer that there was a causal connection between Plaintiff's complaints of sexual harassment and her termination. Specifically, Plaintiff has presented evidence that: (1) other employees who violated Defendant's aforementioned policies were either ignored or let off with a verbal reprimand, rather than terminated (*see infra* discussion of Count VII, Plaintiff's claim for false imprisonment); (2) a conversation between Bostic and Bill Moore ("Moore"), Plaintiff's supervisor, prompted Bostic to confront Plaintiff (Bostic Deposition, at 8–9); (3) Moore told Bostic to "watch out because [Plaintiff] was crazy"; and (4) members of Defendant's managerial staff believed that Plaintiff was "just a complainer," "[e]verybody knew that she was," and "[s]he complained to everybody" (Affidavit of Linda

Sue Groover, Exhibit D to Plaintiff's Response, at 13 and 15).

Where, as here, a plaintiff makes a prima facie showing of *disparate* adverse treatment in her employment following claims of sexual harassment, and the defendant fails to offer a non-discriminatory reason for the adverse action sufficient to rebut plaintiff's prima facie showing as a matter of law, summary judgment is not appropriate. *See, e.g., Fleming,* 120 F.3d at 248 (affirming summary judgment in favor of employer on retaliation claim where employer claimed it did not hire plaintiff for permanent secretarial job because she failed typing test, plaintiff admitted failing typing test, *and plaintiff did not show that employer ever hired an applicant who failed test*).

### Counts III (Assault), IV (Battery), and V (Invasion of Privacy)

Plaintiff alleges that Davis's offensive comments and touching support her claims under Florida common law for assault, battery, and invasion of privacy. Plaintiff has not raised these claims against Davis in his personal capacity, but instead raises them solely against Ritz–Carlton on the theory that Ritz–Carlton is vicariously liable for Davis's intentional torts. The standard for an employer's liability for its employee's intentional torts under Florida's common law doctrine of *respondeat superior* is different from the standard for an employer's liability for a hostile work environment under Title VII and the Florida Civil Rights Act. *Sparks v. Jay's A.C. & Refrigeration, Inc.,* 971 F.Supp. 1433, 1436–40 (M.D.Fla.1997); *Ayers v. Wal–Mart Stores, Inc.,* 941 F.Supp. 1163, 1168–69 (M.D.Fla.1996).

To establish *respondeat superior* liability under Florida common law, the plaintiff must prove that the employee's conduct was within the scope of his employment. "The conduct of an employee is within the scope of his employment, for the purposes of determining the employer's vicarious liability to third persons injured by the employee, only if (1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master." *Sussman v. Fla. E. Coast Properties, Inc.,* 557 So.2d 74, 75–76 (Fla. 3d DCA 1990). Florida state courts applying the *respondeat superior* standard in sexual assault and battery cases have generally held that the employee's sexual misconduct was not within the scope of his employment. *E.g., Agriturf Management, Inc. v. Roe,* 656 So.2d 954 (Fla. 2d DCA 1995).

In this case, Plaintiff has adduced sufficient evidence to establish that Davis's alleged conduct occurred within the time and space limits of his employment. Plaintiff has not, however, adduced any evidence from which a reasonable finder of fact could determine that Davis's actions in offensively touching and verbally assaulting Plaintiff constituted the kind of conduct he was employed to perform, or that Davis was in any way motivated by his desire to serve Defendant. Accordingly, the Court agrees with Defendant that Davis's alleged harassment of Plaintiff did not occur within the scope of Davis's employment, and finds that as a matter of law, Defendant cannot be held vicariously liable for Davis's intentional torts against Plaintiff under Florida common law.

### Count VI—Negligent Retention

To state a viable claim against an employer for negligent retention of an employee, a plaintiff must demonstrate that "during the course of employment, the employer [became] aware or should have become aware of problems with the employee that indicate his unfitness, but the employer fail[ed] to take further action, such as investigation, discharge, or reassignment." *Tallahassee Furniture Co. v. Harrison,* 583 So.2d 744, 753 (Fla. 1st DCA 1991) (citing *Garcia v. Duffy,* 492 So.2d 435, 438 (Fla. 2d DCA 1986)). Moreover, "[u]nder Florida's impact rule, in order to recover damages for emotional distress caused by the negligence of another, the plaintiff must show that the emotional distress flowed from a physical injury sustained by physical impact." *Goodstein v. Gunther Motor Co.,* 1996 WL 903950, at *14 (S.D.Fla. Sept.12, 1996) (finding that

sexual harassment plaintiff's claim for negligent retention cannot survive summary judgment where physical contact was minimal, and did not result in physical injury). *See also R.J. v. Humana of Florida, Inc.,* 652 So.2d 360 (Fla.1995) (explaining impact rule); *Landry v. Florida Power & Light Corp.,* 799 F.Supp. 94 (S.D.Fla.1992), *aff'd,* 998 F.2d 1021 (11th Cir.1993) (same).

■■■■ In the instant case, Plaintiff has presented evidence that she informed Defendant's management about Davis's alleged harassing conduct sometime in 1992. Defendant's own version of the facts indicates that Defendant did not take any action concerning Plaintiff's allegations until approximately July or August of 1993. A reasonable finder of fact could infer from these circumstances that Defendant is directly liable for Davis's tortious conduct on a theory of negligent retention.

Nevertheless, Defendant correctly points out that Plaintiff has not alleged, or adduced any evidence from which a finder of fact could infer, that Davis's contact satisfies the "impact rule." Although Plaintiff alleges that Davis did make unwelcome physical contact with her on occasion, she does not allege that these contacts caused any physical injury. Moreover, a reasonable finder of fact could not infer that Davis brushing against Plaintiff (Resley Deposition, at 94), or grabbing Plaintiff by her uniform and kissing her on one occasion (Resley Deposition, at 53–54), could result in physical injury. Since Florida law clearly requires that emotional distress flow from a physical injury caused by physical impact, Plaintiff's negligent retention claim cannot stand.[3]

3. The Court notes that the Supreme Court of Florida has recognized a very limited, case-by-case exception to the impact rule in cases involving claims of intentional infliction of emotional distress. *R.J. v. Humana of Florida, Inc.,* 652 So.2d at 363. Plaintiff's negligent hiring claim, however, states a cause of action directly against Defendant for its *negligence,* not for its *intentional* conduct. In any event, giving Plaintiff the benefit of all reasonable inferences, Defendant's acts or omissions still could not, as a matter of law, constitute the sort of "outrageous," "extreme," or "atrocious" conduct required to sus-

pend application of the impact rule under Florida law. *Id.*

## Count VII—False Imprisonment

■■■■ To prevail on a claim for false imprisonment under Florida law, a plaintiff must prove that: (1) she was restrained against her will; and (2) "the detention was unreasonable and unwarranted under the circumstances." *Rivers v. Dillards Dep't Store, Inc.,* 698 So.2d 1328, 1331 (Fla. 1st DCA 1997). Plaintiff here alleges that Calvin Bostic,[4] a "security manager" employed by Defendant, "took Ms. Resley into a small room [in the security office], locked the door and accused her of stealing from the hotel. When Ms. Resley tried to leave the room, she could not get out because the door was locked." (Complaint ¶ 34.)

Defendant contends that Plaintiff cannot prevail on her false imprisonment claim because she accompanied Bostic to the security office voluntarily, and asserts that Plaintiff actually "let herself out." (Defendant's Memo at 14–15). Defendant appears to rely solely on Bostic's statement that he "did not confine Ms. Resley against her will" (Bostic Affidavit ¶ 3), although it fails to actually cite to any record evidence on this point.

Plaintiff, on the other hand, testified that once inside the security office, Bostic "hollered" at her, at one point telling her that she was being fired, for violating Ritz–Carlton policy by visiting the employee cafeteria while not on duty and consuming a bowl of soup she had no right to consume. (Resley Deposition, at 122–32.) Plaintiff's deposition testimony also supports her allegation that she was locked in the security office, and was not free to leave. (*Id.*) Furthermore, Plaintiff and fellow Ritz–Carlton employees Carole Sue Werre and Kimberly White testified that other off-duty employees (and on occasion, family members) ate or drank in the

4. Although Plaintiff only states a claim for false imprisonment against Ritz–Carlton, and not against Bostic, there is no dispute that Bostic was acting within the scope of his employment when he allegedly engaged in the conduct of which Plaintiff complains. Hence, Ritz–Carlton may be held vicariously liable for Bostic's conduct under Florida's common law doctrine of *respondeat superior. See supra* discussion of Counts III, IV, and V.

employee cafeteria without incident. (Resley Deposition, at 113–116; Werre Deposition, Doc. No. 31, at 16–21; White Deposition, Doc. No. 33, at 42–45.)

Irrespective of the degree of compulsion Plaintiff may have felt in accompanying Bostic to the security office, Plaintiff has raised a genuine dispute as to whether Bostic locked Plaintiff in the security office against her will, and whether Plaintiff's detention was unreasonable and unwarranted. Given the record evidence in this case that: (1) Bostic had Plaintiff leave the cafeteria and accompany him to the security office; (2) Bostic locked Plaintiff in the office, which she was not free to leave; (3) other off-duty employees visited the cafeteria without incident; and (4) Plaintiff was detained over a bowl of soup; a reasonable finder of fact could infer that Plaintiff was restrained against her will, and that this restraint was unreasonable and unwarranted under the circumstances.

### Count IX (Retaliatory Personnel Action)

Upon consideration of Plaintiff's motion to "voluntarily dismiss" her claim of retaliatory personnel action under Florida's private sector "whistleblower" statute, F.S. § 448.102 (Plaintiff's Response, at 28), the Court will dismiss Count IX of the Complaint.

### Damages

Defendant contends that as a matter of law, Plaintiff has failed to set forth sufficient facts upon which she may recover punitive damages. The Court disagrees. According Plaintiff all reasonable inferences, Plaintiff's evidence concerning Defendant's failure to timely act on Plaintiff's complaints about Davis, the pervasiveness of Davis's harassing conduct, and the manner in which Plaintiff was terminated could support an award of punitive damages.

Defendant also argues that the Court should strike Plaintiff's claim for reinstatement, back pay, and benefits because Plaintiff rejected Defendant's offer for her to return to work. "[A] Title VII claimant's rejection of a job normally ends the defendant's ongoing responsibility for back pay" unless "special circumstances" are present. *Ford Motor Co. v. EEOC,* 458 U.S. 219, 241,

102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). Moreover, "once an employer makes a good faith offer of reinstatement, claimants forfeit their right to reinstatement unless their refusal is reasonable." *Lewis v. Federal Prison Industries, Inc.,* 953 F.2d 1277, 1279 (11th Cir.1992) (quotations omitted).

In this case, a reasonable finder of fact *could* conclude that there were special circumstances justifying Plaintiff's refusal to return to work, and that this refusal was reasonable. *Lewis* is directly on point in this regard. In that case, the Eleventh Circuit found that the employee's refusal to return to work was reasonable, because the hostile environment would have exacerbated the depression for which he was being treated. Here, Plaintiff was being treated for depression ostensibly caused by the hostile environment at Ritz–Carlton, and her doctor advised her not to return to work because of this. Therefore, the Court cannot find, as a matter of law that Plaintiff is not entitled to reinstatement, back pay, and benefits.

In light of the foregoing analysis, it is hereby

**ORDERED AND ADJUDGED** that:

1) Defendant's Motion for Summary Judgment (Doc. No. 18) is **GRANTED IN PART AND DENIED IN PART;**

2) Defendant's Motion for Summary Judgment is **GRANTED as to COUNTS III, IV, V, and VI;**

3) Defendant's Motion for Summary Judgment is **DENIED as to COUNTS I, II, VII, and VIII, and Plaintiff's Prayer for Damages and Equitable Relief;**

4) **COUNTS III, IV, V, VI, and IX** of the Complaint are **DISMISSED WITH PREJUDICE;** and

5) Defendant's Motion for Summary Judgment is **MOOT as to COUNT IX.**